## Richmond.

## Tischler v. Hofheimer, Son & Co.

### March 10th, 1887.

### *Absent*—Lewis, P.

1. Guaranties—*Construction—Effect.*—Letters of credit are regarded as mèrcantile instruments and should receive a fair and reasonable interpretation, according to what the circumstances indicate to have been the intention and understanding of the parties; and their effect is to bind the writer to indemnify the person, who, on the faith of their guaranty, parts with his property, and continues to bind the writer until he revokes the guaranty.

2. Idem—*Case at Bar.*—T., in a letter to H., asked him to let F. have as many boots and shoes as he wanted, and said that he, T., would see H. paid. This letter was presented, and H., on faith of it, sold bills of boots and shoes to F., to whom, previously, H. had refused credit. Three months later, T. recalled the letter, at a time when F. owed H. nothing. H. did not return the letter, but continued to sell goods to F. In suit of H. against T. on the guaranty—

Held:

    1. The letter constituted a continuing guaranty until revoked by T.

    2. T.'s revocation prevented his liability for the goods sold after its date.

Error to judgment of corporation court of city of Norfolk, rendered July 15, 1885, in an action of trespass on the case on a guaranty, wherein Mordecai and Henry Hofheimer, partners in business as Hofheimer, Son & Co., are plaintiffs, and E. Tischler is defendant. The verdict was for $1,074.65, with interest from April 1, 1883, till paid. The defendant moved to set aside the verdict. The court

refused, and entered judgment accordingly. The evidence being certified, defendant obtained a writ of error and *supersedeas.* Opinion states the case.

*Harmanson & Heath,* for the plaintiff in error.

*Borland & Willcox,* for the defendants in error.

HINTON, J., delivered the opinion of the court.

The claim of Hofheimer, Son & Co. is that the defendant, Tischler, is liable to them in the sum of $1,074.65 for goods sold and delivered by them to one H. Fordonski, between May 7th, 1878, and March 17th, 1883, upon the faith of the following written order or letter of credit, to-wit:

"PORTSMOUTH, VA., *May 9th*, 1878.
"HOFHEIMER, SON & CO.:

"*Gents*—Let Mr. H. Fordonski have as many shoes and boots as he want, and I see you are getting paid for. Don't charge him more as goods is worth.
"Yours, .
"E. TISCHLER."

The plaintiff had a verdict, which the court refused to set aside, whereupon the defendant obtained this writ of error. The chief difficulty in cases of this kind lies, as has been often said, in determining whether general words of guaranty or credit, which apply equally to a series of similar transactions, be restricted to the first of the series of transactions, or be extended by construction so as to embrace the whole series. This difficulty, however, will often be found to be greatly lessened, if not entirely dispelled, by an examination, not alone of the language of the letter, but of the object of the credit as well. These letters of

credit are regarded as mercantile instruments, and according to the better opinion, they should receive not a strict and technical, but a fair and reasonable interpretation, according to the true import of their terms, and what may be fairly presumed to have been the intention and understanding of the parties, (*Moore* v. *Holt*, 10 Gratt. 294; *Douglas* v. *Reynolds*, 7 Peters' R. 113; *Lawrence* v. *McCalmont*, 2 Howard, 426,) giving the preference where the language is doubtful to that interpretation which relates to what the parties have in view at the time and excludes future contingencies, and where the instrument is so worded as to convey the impression that the guarantor means to assume a more extensive responsibility, then so construing his language as to give to it the sense which would naturally be attributed to it by the person to whom it was addressed. *Douglas* v. *Reynolds*, 2 Amer. Lead. Cas. 139.

Now, viewing the letter of credit here in the light of the evidence adduced for the plaintiff, to which, as this is a certificate of evidence, we are under the settled rule of this court confined, and having regard to the nature of the business in which Fordonski was engaged, and the apparent object of the letter, we cannot doubt that it was originally intended, and, for a short time, treated by the parties as a continuing guaranty.

Here, according to the testimony of H. Hofheimer, of the firm of Hofheimer, Son & Co., wholesale boot and shoe merchants, who had refused Fordonski credit to the extent of $100 upon the ground that he was a stranger to them; whereupon Fordonski asked if his brother-in-law, the defendant Tischler, would be satisfactory to them as surety for him. To which they replied, " Yes." And then it was, and not until then, that Fordonski obtained and delivered to them this letter of credit. It was under such circumstances as these that this letter was given. Tischler knew that his brother in-law, who was entirely without capital

and credit, would require that his small stock of goods should be replenished from time to time; and to enable him to do this he gave this letter of credit, in which he advisedly used the words, "Let Mr. H. Fordonski have as many shoes and boots as he want, and I see that you are getting paid for," meaning thereby, as the subsequent practical construction of this letter by them clearly shows, that he would be responsible for *as many;* that is, any boots and shoes they might furnish Fordonski, until further notified. Now, the words "any goods," when used in letters of credit, has repeatedly been construed as affording evidence of a continuing guaranty, where the order contained no limitation as to time, and we think that the same construction must be placed upon the words "as many shoes and boots." *Barstow* v. *Bennett,* 3 Camp. 220; *Mason* v. *Pritchard,* 12 East. 227.

But while the court is satisfied that this letter must be construed as a continuing guaranty, we are unanimous in the opinion, upon the evidence of the plaintiff alone, that this credit was subsequently withdrawn; that no reliance was placed upon it after 1st January, 1879, and that therefore there is no liability upon the plaintiff in error for any part of the demand asserted against him. H. Hofheimer, one of the firm of the Hofheimer, Son & Co., himself testifies that about three months after the date of the order, the defendant informed the plaintiffs that he wished to withdraw the order; and the same witness subsequently admitted that the defendant "requested the revocation and surrender of the order," and while he does not remember the date of this request, it is perfectly clear that it must have been in the latter part of the year 1878, for it is not pretended that any such request was made after Fordonski renewed his dealings with this firm, which had ceased on the 31st of December, 1878, and yet the reply to that request was that he could have his order whenever Fordon-

ski's bill was paid. But this was not all, for Roberts, the book-keeper of the plaintiffs, and one of their witnesses, testifies that on the 3d day of April, 1879, Fordonski called and demanded of him the surrender of the order, at which time there was nothing due the plaintiffs, and that notwithstanding *he knew where the paper was*, and that all dealings *had ceased between them*, he put him off with the pretense that he was too busy to look for it.

Under these circumstances the effort of the plaintiffs to hold the defendant liable for a liability which did not begin to accrue until May, 1879, is utterly without warrant or justification and cannot be maintained. For these reasons the court below erred in refusing to set aside the verdict of the jury and to award the defendant a new trial, and for this error the judgment must be reversed, and the case must be remanded for a new trial to be had therein.

JUDGMENT REVERSED.