# Richmond.

## THE B. F. GOODRICH RUBBER COMPANY, INC.
## v. B. FISCH.

### March 19, 1925.

|Case submitted for decision before Judge Kelly qualified.

|1.  GUARANTY—*Definition.*—A guaranty is a collateral undertaking by one person to be answerable for the payment of some debt or the performance of some duty or contract for another person who stands first bound to pay or perform. There can only be a contract of guaranty where there is some principal or substantive liability to which it is collateral; if there is no debt, default, or miscarriage of a third person, either present or prospective, there can be nothing upon which to base a contract of guaranty.

|2.  GUARANTY—*Collateral Undertaking.*—The chief characteristic of a guaranty being that it is collateral to some other contract or duty, if it can be seen that the person sought to be held is primarily liable, prior to the breach of the contract or duty by some one else, the conclusion at once follows that the contract in question is not one of guaranty; and, although a contract is in form to answer for the debt or default of another, if its leading purpose is to secure some benefit to the promisor or to promote his interest, it will be regarded as an original undertaking. On the other hand, although the word "guaranty" may be used when the engagement is an original and absolute one to pay the debt when it becomes due, that construction is put upon it only when it is plain that such was the intent of the parties. The question as to whether a contract is one of original promise or of guaranty merely is one of fact to be determined from the circumstances surrounding the transaction.

3.  GUARANTY—*Continuing Guaranty—Notice of Default.*—Ordinarily the rule is that if the undertaking is a continuing guaranty the failure to give notice within a reasonable time to the guarantor of his principal's default in the payment of the debt, will absolve the guarantor from liability.

4.  GUARANTY—*Contract of Guaranty or Suretyship.*—Whether the contract is that of suretyship or guaranty does not depend upon the use of particular or technical words, such as "security," "surety," "guaranty"

or "guarantee." The nature of the obligation, whether primary or secondary, is the determining element. If the obligation is direct and primary, the contract will 'be that of suretyship, and not of guaranty, although the word "guaranty" or "guarantee" is employed.

5. GUARANTY—*Contract of Guaranty or Suretyship—Case at Bar.*—Where defendant and another, in consideration of a manufacturer agreeing to sell on terms its goods to the other, executed an instrument whereby they jointly and severally agreed to guarantee the payment of the goods purchased and the instrument provided that the manufacturer, without notice to the "undersigned", might extend credit or the time of payment to the purchaser, the contract is neither an absolute nor a continuing guaranty, and notice of default of the purchaser was not · necessary to hold the defendant. By executing and delivering the instrument to the manufacturer the defendant became bound on a primary obligation, and not on a collateral undertaking.

6. GUARANTY—*Contract of Guaranty or Suretyship—Joint Execution of the Contract.*—The contract of the surety is made at the same time and usually jointly with that of the principal; while that of the guarantor is a contract separate and distinct from that of his principal. It is certain that in most cases the joint execution of a contract by the principal and another operates to exclude the idea of a guaranty, and that in all cases such fact is an index pointing to suretyship.

7. APPEAL AND ERROR—*Judgment by Appellate Court—Contract of Guaranty or Suretyship—Case at Bar.*—In the instant case the sole question was whether a paper executed by defendant and delivered to the plaintiff was a contract of suretyship or guaranty. If the contract was one of guaranty, defendant was not liable. If the contract was one of suretyship, defendant was liable. There was a judgment for defendant. By the Supreme Court of Appeals it was held that the contract was one of suretyship, and instead of remanding the case for a new trial that court entered judgment for the plaintiff against defendant for the sum at issue, under section 6365 of the Code of 1919.

Error to a judgment of the Circuit Court of the city of Newport News, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Nelms, Colonna & McMurran,* for the plaintiff in error.

*S. R. Buxton,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is a proceeding by notice of motion for judgment instituted by the plaintiff in error, hereinafter called plaintiff, against the defendant in error, hereinafter called defendant, to recover the sum of $400.00 alleged to be due by virtue of a certain written obligation entered into and signed by defendant.

A jury being waived, all matters of law and fact were submitted to the judgment of the trial court, which found in favor of the defendant, and entered judgment against the plaintiff for the costs of the proceeding. To this action of the trial court this writ of error has been awarded.

It appears from the record that one Charles Epstein, being desirous of purchasing automobile supplies from the plaintiff, together with the defendant, executed and delivered to the plaintiff the following paper:

"THE B. F. GOODRICH RUBBER COMPANY,
    "Akron, Ohio.

"In consideration of your complying with our request hereby made to you to sell your goods, on such terms as you may from time to time see fit to make, to Charles Epstein, of Hampton, Va., hereinafter called the purchaser, we, the undersigned, and each of us jointly and severally, agree to and hereby guarantee to you the payment of such sum or sums of money as may now be due, or at any time or times hereafter become due to you from the purchaser, for any goods sold and delivered by you at any time to the purchaser, and you are at liberty, without notice to the undersigned, to give the purchaser at any time and from time to time

such extension or extensions of credit or time for payment as you may think proper, evidenced by either promissory notes or otherwise, and the guarantee of the undersigned hereby made shall also extend to guaranteeing payment of such notes so taken by you from the purchaser and to such extension or extensions in other forms as you may give, but the liability of the undersigned is not at any time to exceed four hundred 00/100 dollars ($400.00) for which sum this instrument shall be a continuing guarantee, although the credit extended by you may have exceeded that amount.

"Charles Epstein,
"B. Fisch.

Upon the faith of this paper, dealings were entered into between the plaintiff and Epstein, which continued until September 24, 1921. In December, 1921, Epstein filed his petition in bankruptcy, owing the plaintiff the sum of $510.60. Plaintiff proved its claim in the bankrupt proceeding and received in dividends the sum of $49.60. About twenty-one months after the filing of the petition in bankruptcy by Epstein, plaintiff made demand upon the defendant for the sum of $400.00 balance due upon the indebtedness of Epstein.

The defendant refused to accede to the demand of the plaintiff and this action was brought.

The chief ground of defense relied on is that the defendant was relieved of all liability by reason of his execution of the paper set forth, *supra*, by the failure of plaintiff to notify him of Epstein's default. That the plaintiff did not so notify defendant is a conceded fact in the case.

The sole question for the determination of this court is one of law, namely, the proper construction of the paper writing executed by the defendant and Epstein

and delivered to plaintiff. Is the instrument sued on an absolute guaranty, a continuing guaranty, or is the defendant, under the provisions and execution thereof, a surety? Much confusion has crept into the text books and adjudicated cases by confounding the terms guaranty and suretyship and making use of the same interchangeably.

[1, 2] In the case of *Cobb and others* v. *Vaughan & Company, Bankers, ante,* p. 100, 126 S. E. 77, this court, in answer to the question as to what constitutes a guaranty, quotes with approval the rule laid down in 20 Cyc. 1397, as follows:

"A guaranty is a collateral undertaking by one person to be answerable for the payment of some debt or the performance of some duty or contract for another person who stands first bound to pay or perform. There can only be a contract of guaranty where there is some principal or substantive liability to which it is collateral; if there is no debt, default, or miscarriage of a third person, either present or prospective, there can be nothing upon which to base a contract of guaranty. The chief characteristic of a guaranty being that it is collateral to some other contract or duty, if it can be seen that the person sought to be held is primarily liable, prior to the breach of the contract or duty by some one else, the conclusion at once follows that the contract in question is not one of guaranty; and, although a contract is in form to answer for the debt or default of another, if its leading purpose is to secure some benefit to the promisor or to promote his interest, it will be regarded as an original undertaking. On the other hand, although the word 'guaranty' may be used when the engagement is an original and absolute one to pay the debt when it becomes due, that construction is put upon it only when it is plain that such was the in-

tent of the parties. The question as to whether a contract is one of original promise or of guaranty merely is one of fact to be determined from the circumstances surrounding the transaction."

In defining a guaranty, Judge Freeman, in the annotation appended to *Pearsell Mfg. Co.* v. *Jeffreys,* 105 Am. St. Rep. 502, says: "A guaranty is an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform."

In the written opinion of the learned judge of the trial court we find the contentions of plaintiff and defendant, as conceived by him, to be as follows: "The plaintiff argues that the instrument sued on is an absolute guaranty and that the defendant here is absolutely liable for the maximum amount of $400.00 * * * whether or not notice of the default of the principal debtor or notice of the guarantor's liability has been given. Defendant argues and insists that the instrument is a continuing guaranty and that notice to bind the guarantor thereon must be given within a reasonable time after default has been made by the principal debtor."

[3] It must be conceded that, ordinarily, the rule is that if the undertaking is a continuing guaranty the failure to give notice within a reasonable time to the guarantor of his principal's default in the payment of the debt, will absolve the guarantor from liability. As to whether this rule extends to a principal who is insolvent or becomes a bankrupt, we do not deem it necessary in the instant case to decide.

[4] When construing a paper to determine whether the contract is one of suretyship or guaranty, we think

the rule of construction as stated in 28 C. J. 891, is the correct one.   It is there said:   "Whether the contract is that of suretyship or guaranty does not depend upon the use of particular or technical words, such as 'security,' 'surety,' 'guaranty' or 'guarantee.'   The nature of the obligation, whether primary or secondary, is the determining element.   *   *   If the obligation is direct and primary, the contract will be that of suretyship, and not of guaranty, although the word 'guaranty' or 'guarantee' is employed."

[5] Tested by this rule, we are of opinion that the contract under consideration is neither an absolute nor a continuing guaranty, but is a contract of suretyship, and that notice was not necessary.

In Elliott on Contracts, section 3987, the rule as to notice is thus stated:   "It is ordinarily the duty of a person who has entered into an absolute undertaking of suretyship to make inquiry and ascertain whether the principal is discharging the obligation, and he is not entitled to notice of default from the creditor, nor is the creditor required before proceeding against the surety to make demand on the principal for the payment or performance of the contract."

By executing and delivering the instrument to the plaintiff, the defendant became bound on a primary obligation, and not on a collateral undertaking.

[6] As stated in 28 C. J. 890:   "The contract of the surety is made at the same time and usually jointly with that of the principal; while that of the guarantor is a contract separate and distinct from that of his principal."

In the note cited, *supra,* Judge Freeman succinctly and clearly states the difference between a contract of guaranty and a contract of suretyship as follows: "The difference between the contract of a guarantor

and the contract usually entered into by a surety is that in the case of a guarantor the promise of the person secondarily liable is a collateral promise to pay, in case default is made by one who is primarily liable for the thing guaranteed, while a surety contracts directly as a principal to pay the sum of money for which he is secondarily liable."

By the very language of the contract, the defendant, as surety, became secondarily liable to the plaintiff in a sum not exceeding $400.00. The plaintiff, by its further terms, is given full power to extend credit from time to time, and also to extend the time of payment. Unless the paper was intended as the joint liability of the parties thereto, why the language "we, the undersigned, and each of us *jointly* and severally, agree to and hereby guarantee to you the payment of such sum or sums of money as may be now due or at any time or times hereafter become due to you from the purchaser," etc. That the whole language refers to the defendant is plain to us. For what imaginable reason would Epstein become the guarantor of his own debt? To do so would be absurd, as his guarantee could add nothing to his solvency.

Is not the following quotation from the contract not only illuminating, but conclusive: "You are at liberty, without notice to the undersigned, to give the purchaser at any time, and from time to time, such extension or extensions of credit or time for payment as you may think proper   *   *."

Can it be contended that in the use of the word "undersigned" any one other than the defendant was intended? To us it is apparent that the extension of credit upon the part of the plaintiff was based solely upon the obligation of the defendant, and he is in any event secondarily, if not primarily, liable for a sum not

exceeding $400.00.  That he is a guarantor is precluded by the joint execution of the contract by himself and Epstein.

It is certain that in most cases "the joint execution of a contract by the principal and another operates to exclude the idea of a guaranty, and that in all cases such fact is an index pointing to suretyship."  *Saint* v. *Wheeler*, 95 Ala. 362, 10 So. 539, 36 Am. St. Rep. 210.

Chief Justice Frazer, speaking for the court in *McMillan* v. *Bull's Head Bank*, 32 Ind. 11, 2 Am. Rep. 323, goes even further than this and says:  "There is no case in the books, to our knowledge, and some pains have been bestowed in their examination, in which one contracting jointly with the principal debtor has been deemed a guarantor, and allowed to avail himself of the defenses peculiar to that character."

Many authorities are cited in the brief of defendant to support his contention that the guaranty is a continuing one, but the cases cited are not analogous.  In each case the guaranty relied on was a separate instrument upon which only the guarantor was bound, or else was held to be collateral to some other contract of the primary debtor.

In *Tischler* v. *Hofheimer, Son & Co.*, 83 Va. 35, 4 S. E. 370, the only Virginia case relied on by defendant, the distinction is apparent, from the statement of the case contained in the syllabus:

"T. in a letter to H., asked him to let F. have as many boots and shoes as he wanted, and said he would see H. paid.  This letter was presented, and H., on faith of it, sold bills of boots and shoes to F., to whom previously he had refused credit.  Three months later T. recalled the letter, at a time when F. owed H. nothing.  H. did not return the letter, but continued to sell

goods to F. In a suit of H. against T. on the guaranty. Held.

"1. The letter constituted a continuing guaranty until revoked by T.

"2. T.'s revocation prevented his liability for the goods sold after its date."

As observed, the contract relied on was not joint but several; the guaranty held by the court to be a continuing one, was a collateral undertaking by T. to be answerable for the debt of F.

There is no difficulty in applying the law where the construction of the contract results in a case of continuing guaranty; the difficulty is in seeking to apply the law applicable to a case of continuing guaranty to a case of suretyship.

[7] For the reasons stated, we are of the opinion that the judgment entered by the trial court must be reversed and set aside, and this court, under the provisions of section 6365 of the Code of 1919, instead of remanding the case for a new trial, will proceed to enter judgment in favor of the B. F. Goodrich Rubber Company, Incorporated, plaintiff, against B. Fisch, defendant, for the sum of four hundred dollars, with interest thereon from October 26, 1923, until paid, and its costs in this behalf expended.

*Reversed.*