## CIRCUIT COURT OF FAIRFAX COUNTY

Union Recovery, L.P.

v.

Robert J. Leipzig

February 16, 2000

Case No. (Law) 177256

BY JUDGE KATHLEEN H. MACKAY

On December 31, 1998, Union Recovery Limited Partnership ("Union") filed suit against Dr. Robert J. Leipzig in an attempt to collect on a promissory note that was unconditionally guaranteed by Dr. Leipzig. On December 14, 1999, this matter came before the Court for trial. After hearing evidence in this case, the Court took the matter under advisement. For the reasons stated below, I rule in favor of the Plaintiff Union.

### I. *Prior History*

On June 8, 1989, the Federal Savings Bank of Virginia, F.S.B., extended two loans to Dr. Thomas E. Horton. Dr. Horton needed $85,000.00 to buy into a medical practice. The additional $15,000.00 was to pay off other debts. The loans are evidenced by two promissory notes, one for $20,000.00 and one for $80,000.00. *See* Df. Exh. 1 and Pl. Exh. 1. The Notes provided for payment of the principal on demand, but if no demand is made, then on July 1, 1990.

Also on June 8, 1989, Defendant Leipzig entered into a guaranty with F.S.B. for the debts of Thomas E. Horton in the principal amount of $20,000.00. *See* Df. Exh. 2. The Guaranty "absolutely and unconditionally guarantee(s) to the Bank the full and prompt payment when due . . . of each

and every debt, liability, and obligation of every type and description which Borrower may now or at any time hereafter owe to Bank." *Id.*

Both Horton and Leipzig defaulted on their obligations to F.S.B. On April 10, 1992. The Resolution Trust Corporation ("RTC") was appointed receiver for F.S.B. and assumed control of its assets, including the Notes and Guaranty at issue. Then, on or about May 25, 1995, the RTC sold the $80,000.00 Note to Union. *See* Pl. Exh. 4. This sale of the Note was later followed on August 18, 1995, by an assignment from the RTC to Union of the Leipzig Guaranty. *See* Pl. Exh. 3.

After receiving the $80,000.00 Note and Guaranty, Union attempted to collect on the delinquent debt by sending a letter on June 5, 1995, to Dr. Horton that was copied to Dr. Leipzig. *See* Pl. Exh. 5. Union later filed suit in Fairfax County Circuit Court against Dr. Horton and Dr. Leipzig on August 30, 1995, in an attempt to recover on the Note. *See Union Recovery, L.P. v. Horton*, At Law No. 144826. Eventually, after appealing a Circuit Court ruling on a Plea in Bar to the Virginia Supreme Court and having the case remanded, Plaintiff Union voluntarily nonsuited Law 144826 on July 14, 1998.

Now, Plaintiff has filed this action against Dr. Leipzig to again attempt collection on the Guaranty. Plaintiff seeks judgment in the amount of $20,000.00, the principal amount of the Guaranty, along with pre-judgment interest and attorneys' fees.

## II. *Facts at Trial*

At the trial on December 14, 1999, Plaintiff presented three witnesses: Robert Eisman, President of Union Financial and General Partner of Union Recovery; Dr. Thomas B. Horton; and Dr. Robert Leipzig.

Mr. Eisman testified that Union purchased the $80,000.00 Note from the RTC in 1995. Plaintiff introduced into evidence the Loan Sale Agreement. *See* Pl. Exh. 4. Mr. Eisman stated that upon the purchase of the Note, Union received the credit files, a copy of the $20,000.00 Guaranty, and a payment list from the RTC's records. *See* Pl. Exh. 8. In connection with the Loan Sale Agreement, Union received the original Note for $80,000.00. *See* Pl. Exh. 1.

Mr. Eisman also explained that Union later received an assignment of the Leipzig Guaranty on August 18, 1995. *See* Pl. Exhs. 2 and 3. Union was told that the original of the Guaranty was missing. Mr. Eisman did not know that

the RTC might have already assigned the Guaranty to Premiere, as alleged by Defendant. Nor did Mr. Eisman know of the sale of the $20,000.00 Note to Premier in 1994.

Following Union's acquisition of the Note and Guaranty, Mr. Eisman testified that Union made attempts to collect on the debt. *See* Pl. Exh. 5; (Pl. Exh. 6, the June 30, 1995, demand letter was not admitted into evidence). However, Union received no payments, so this suit was initiated. Mr. Eisman stated that there was never an agreement between Union and Dr. Leipzig to release Dr. Leipzig from the Guaranty. In addition, he testified that Union in no way altered the terms of the Guaranty as alleged by Dr. Leipzig.

Mr. Eisman was the only witness to testify about attorneys' fees. Concerning Union's attempts to collect on the Note and Guaranty, Mr. Eisman testified that Union spent $22,000.00 plus $4,400.00 in collection fees in its first suit, the case later nonsuited by Plaintiff voluntarily, against Dr. Horton and Dr. Leipzig for a total of $26,400.00 in attorneys' fees. However, $14,000.00 of those fees came from the appeal of the Plea in Bar to the Virginia Supreme Court. Mr. Eisman did not offer any testimony regarding fees spent in this current litigation, nor were any exhibits presented that would allow the Court to assess reasonableness of fees.

Next, Plaintiff called Dr. Thomas B. Horton. Dr. Horton testified that he was professionally acquainted with Dr. Leipzig, who referred Dr. Horton to F.S.B. for loan assistance. In order for Dr. Horton to receive the total $100,000.00 loan from F.S.B., F.S.B. asked for a guarantor. Prior to closing, Dr. Horton thought the Leipzig Guaranty was for $20,000.00 of the entire $100,000.00. Subsequent to closing and at trial, Dr. Horton testified that the $80,000.00 Note had no guaranty and Dr. Leipzig's Guaranty was only for the $20,000.00 Note.

Dr. Horton stated he settled the $20,000.00 Note issue with Premier, the institution that allegedly purchased the $20,000.00 Note and Guaranty from the RTC. Upon settling the $20,000.00 Note with Premier, the Note and Guaranty were marked "Paid November 6, 1997."

Concerning the $80,000.00 Note, Dr. Horton explained that the prior case between Union and Dr. Horton was nonsuited because they reached a settlement for $22,000.00. Since this settlement was less than the full amount of the debt, this case was instituted against Dr. Leipzig to collect on his Guaranty.

Finally, Plaintiff called Dr. Robert Leipzig. Dr. Leipzig testified that he did not closely review the loan documents or the Guaranty at the closing with F.S.B. He recalls the closing to be very casual. However, he does not believe any of the boxes on the Guaranty were marked. Specifically, he does not recall

the two "xx's" above the box in section A of the Guaranty. That section of the Guaranty states that "the undersigned guarantee(s) to Bank the payment and performance of each and every debt, liability, and obligation of every type and description which Borrower may now or at any time hereafter owe to Bank." *See* Df. Exh. 2.

Dr. Leipzig insists he did not agree to guarantee both Notes. Instead, he thought his Guaranty covered only the $20,000.00 Note. This makes sense, he claims, because he endorsed the back of the $20,000.00 Note in the guarantee section, whereas, he did not endorse the guarantee portion of the $80,000.00 Note.

Dr. Leipzig admits being contacted by the Plaintiff for collection under the Guaranty for the $80,000.00 Note. Union informed him of Dr. Horton's default. Dr. Horton told Dr. Leipzig he was handling the situation. However, Dr. Leipzig did not fear Union's attempts to collect because he believed he did not guarantee the $80,000.00 Note in Union's possession.

Finally, Dr. Leipzig stated that he has at no time made any payments for Dr. Horton under the Guaranty for either of the Notes. Dr. Horton reached a settlement with Premier concerning its $20,000.00 Note so Dr. Leipzig did not have to get involved under the terms of the Guaranty. Additionally, Dr. Leipzig made no payments on the $80,000.00 Note to Union because he did not believe he had to.

For Defendant's case, he called Dr. Horton, John M. Lippard, and himself.

Dr. Horton again testified that his recollection was that Dr. Leipzig only guaranteed the $20,000.00 Note. He then attempted to explain the history behind the RTC sale to Premier and of the eventual settlement with Premier of the $20,000.00 Note. Defendant attempted to offer Defendant's Exhibits 1B, 6, 7, and 8. However, the Court refused to admit those exhibits on hearsay grounds because defendant did not present anyone from the RTC or Premier to testify to that transaction, thus, anything from Dr. Horton on the matter constituted hearsay.

Next, Defendant called John M. Lippard, an attorney, who was involved in the Premier transaction. Again, Defendant tried to place in evidence Defendant's Exhibits 1B, 6, 7, and 8, but again, the Court refused the exhibits. Mr. Lippard stated that a settlement was reached in November 1996 for $8,000.00 between Premier and Dr. Horton on the $20,000.00 Note. Upon payment of the settlement, the loan documents, including the Note and the original Guaranty, were marked "paid." Mr. Lippard testified that he was not aware of the $80,000.00 Note and that he never had any contact with Dr. Leipzig or his attorney.

Finally, Dr. Leipzig again testified about the terms surrounding the initial loan of the $100,000.00 from F.S.B. He claims Dr. Horton was not approved for the entire $100,000.00. Instead, the Bank would provide a loan for $80,000.00 but Dr. Horton would need a guarantor for the additional $20,000.00. Dr. Leipzig says he stepped in to guarantee only the $20,000.00 Note.

## III. *Legal Analysis*

### A. *Scope of Guaranty*

The first issue raised before the Court is the scope of the Guaranty. Dr. Leipzig does not believe that section A of the Guaranty, calling for complete coverage of Dr. Horton's debts with the Bank, was checked at the time of the closing. In addition, he argues that because the "xx's" fall outside the box, the terms of the Guaranty are ambiguous.

Section A requires the guarantor to absolutely and unconditionally guarantee "the payment and performance of each and every debt, liability, and obligation of every type and description which Borrower may now or at any time hereafter owe to Bank."

At the trial, the Court admitted parol evidence to establish the scope of the Guaranty. Dr. Leipzig claims he meant to only guarantee the $20,000.00 Note, which is evidenced by his signature on the back of that Note in the "Guarantee" section. He did not sign the back of the $80,000.00 Note under the Guaranty provision. Additionally, Dr. Leipzig believes that if the "xx's" had been in section A of the Guaranty at the time of closing, he would have noticed.

However, Dr. Leipzig also testified that he did not review the documents at the closing with F.S.B. He claims the closing was a casual thing and the documents were not reviewed carefully. The Court does not weigh heavily the fact that Dr. Leipzig only signed the back of one of the Notes and not the other; after all, he testified to the casual nature of the closing, thus making it likely that some details were overlooked and mistakenly skipped. In addition, the Court feels it is unlikely that the Bank would have presented documents for signing that were not complete. The Court cannot accept the proposition that the Bank gave Dr. Leipzig blank documents to sign and then later typed in the "xx's" requiring the doctor's full guaranty without his knowledge or approval. Defendant presented no real evidence as to any alleged fraud on the part of the Bank.

Thus, the Court concludes that Dr. Leipzig is obligated under the terms of section A of the Guaranty to guarantee all loans F.S.B. made to Dr. Horton. However, Dr. Leipzig's liability is limited to the principal amount of $20,000.00, plus accrued interest and attorneys' fees, collection costs, and enforcement expenses as dictated under section 4 of the Guaranty.

B. *Proceeding on the Guaranty*

"A guaranty is a collateral undertaking by one person to be answerable for the payment of some debt or the performance of some duty or contract for another person who stands first bound to pay or perform." *B. F. Goodrich Rubber Co. v. Fisch*, 141 Va. 261, 265 (1925) (quoting *Cobb v. Vaughan & Co.*, 141 Va. 100 (1925)). "Where the intent of a guarantor is to guarantee any indebtedness of the principal up to a stated maximum, it does not matter how the debt is evidenced." *Bennett v. First Nat'l Bank*, 213 Va. 672, 676 (1973).

In June 1989, Dr. Leipzig signed a written contract guaranteeing the payment of Dr. Horton's debts. Dr. Leipzig's liability was limited to $20,000.00 of the total indebtedness incurred by Dr. Horton. Dr. Horton's indebtedness consisted of two defaulted loans for a total amount of $100,000.00 plus interest as evidenced by two promissory notes. Twenty thousand of the total indebtedness has been resolved, but that leaves an indebtedness in excess of $80,000.00 including interest. Thus, under the terms of the Guaranty, the Bank or its successor has a right to attempt to collect on Dr. Leipzig's principal Guaranty of $20,000.00 on the outstanding $80,000.00 debt.

Section 7 of the Guaranty states that "the liability of the undersigned shall not be affected or impaired by . . . (iv) any full or partial release of, settlement with, or agreement not to sue Borrower." Thus, the underlying Guaranty is not affected by the alleged settlement between the borrower Dr. Horton and Premier of a portion of the total indebtedness or by Dr. Horton's prior settlement with Union for $22,000.00 on the $80,000.00 Note.

The facts support a finding that Plaintiff Union purchased the $80,000.00 Note made between F.S.B. and Dr. Horton from the RTC on May 25, 1995. *See* Pl. Exhs. 1 and 4. Union later received an assignment of the Dr. Leipzig Guaranty on August 18, 1995. *See* Pl. Exhs. 2 and 3. At the time of the Assignment, Union received a copy of the Guaranty.

Even in light of this sale and assignment to Union of the Horton debt and Leipzig Guaranty, Defendant challenges the right of Union to enforce the Guaranty. However, under Virginia law, "an assignee stands in the shoes of the assignor and acquires all of the assignor's rights and liabilities in the

assignment." *Union Recovery, Ltd. Partnership v. Horton*, 252 Va. 418, 423 (1996). In that case, the Court ruled that when the RTC took over as receiver from the failed financial institution, it acquired the right to sue on the defaulted instruments that the financial institution did not get to. This right to sue was then passed on to Union for the right was "not merely a right 'personal to the assignor and for its benefit only'." *Id.* at 424.

The same analogy applies in this case. In fact, this case involves the same transaction as that considered by the Supreme Court in *Union v. Horton*. In that case, the Court construed the promissory note transaction between the RTC and Union and concluded that Union had a right to seek enforcement of the Note. Now, the same conclusion is reached regarding Union's attempt to enforce the Guaranty subsequent to receiving it through an assignment with the RTC.

Finding the assignment legitimate and carrying with it the right to enforce the Guaranty, the Defendant also attacks Union for its failure to possess an original of the Guaranty. Defendant claims that Union's failure to present an original Guaranty defeats Union's claim of ownership to the Guaranty. *See Ashcraft v. Lookadoo*, 952 S.W.2d 907 (Tex. Ct. App. 1997) (holding that a copy of the guaranty securing the original note did not prove that the guaranty was still valid and owned by the RTC when the RTC assigned the note to a subsequent purchaser.)

Defendant tries to bolster his argument concerning lack of ownership by attempting to present evidence of the sale of the Guaranty to another institution, Premier. However, the Court did not accept such testimony or documentary proof on hearsay grounds. Defendant was free to call as a witness someone from the RTC or Premier to testify to the alleged transaction, but he did not. This piece of missing evidence is crucial to Defendant's case and to its ultimate failure. Defendant carried the burden of proving his affirmative defense of lack of ownership by Union and possible release of the Guaranty by Premier, but he failed to meet his burden. The only way that Defendant could win on his defense would be through numerous assumptions on the Court's part, assumptions the Court declines to make.

Here, the only evidence was of a purchase by Union of the $80,000.00 Note and the subsequent assignment of the Guaranty in 1995. There is no evidence before this Court that the RTC sold the Guaranty and all its rights to anyone else. Mr. Lippard testified that he received the original Guaranty from Premier in 1997, but there is no evidence explaining how Premier got the Guaranty. Even if the Court were to assume that Premier got the Guaranty through a proper transaction with the RTC, there is nothing to prove that such a transaction took place before the RTC and Union transaction.

Thus, Union has a right to attempt collection under the terms of the Guaranty. Under section 2 of the Guaranty, which applies when section A of the Guaranty is checked, this Guaranty is "an absolute, unconditional, and continuing guaranty of payment of the indebtedness and shall continue to be in force and be binding upon the undersigned, whether or not all indebtedness is paid in full, until this guaranty is revoked prospectively as to future transactions, by written notice actually received by the Bank, and such revocation shall not be effective as to indebtedness existing or committed for at the time of actual receipt of such notice by the Bank, or as to renewals, extensions, and refinancing thereof."

The quoted language puts the burden on Dr. Leipzig to terminate the Guaranty if and when he chooses. *See Bank of Southside Va. v. Candelario*, 238 Va. 635, 638 (1989). The F.S.B., or Union as the institution standing in its shoes, had to receive written notice of Dr. Leipzig's intention to terminate the Guaranty in order for Dr. Leipzig to be released from liability.

Here, Mr. Lippard testified that the original Guaranty was marked "paid" after the settlement of the $20,000.00 Note. This action alone is not enough to release Dr. Leipzig from further obligations under the Guaranty. Dr. Leipzig did not testify that he ever wrote either institution regarding his intent to terminate the Guaranty, nor did he present any documents evidencing this intent. Under the clear language of the Guaranty, the stamp indicating "paid" is not enough to release Dr. Leipzig from liability.

Therefore, the Court concludes that the RTC had the right to assign the Guaranty to Union. Union then has the right to collect under the Guaranty. Dr. Leipzig has not effectively sought a release, nor has it been demonstrated that any other transaction released him from his liability. Thus, Dr. Leipzig is liable under the Guaranty for the principal amount of $20,000.00 plus interest. Robert Eisman testified that the accrued interest on the $20,000.00 Guaranty is $14,310.00. *See* Pl. Exh. 9. The interest was calculated using the Wall Street Journal Prime rate plus an additional 2%, with a floor of 9.50%.

Dr. Leipzig is liable to Union for $34,310.00.

C. *Attorneys' Fees*

Section 4 of the Guaranty states that the undersigned can be found liable for the principal amount of $20,000.00 "plus accrued interest thereon and all attorneys' fees, collection costs, and enforcement expenses referable thereto." Df. Exh. 2.

At trial, Mr. Eisman testified to the fees associated with collection attempts made by Union since purchasing the Note. He stated that Union spent

$22,000.00 plus $4,400.00 in collection fees for a total of $26,400.00 against Dr. Horton in the prior case. That case was Union's first attempt to collect on the $80,000.00 Note by going after Dr. Horton directly. Eventually, Plaintiff voluntarily nonsuited that case because the parties had reached some form of settlement.

Concerning the current case brought by Union against Dr. Leipzig to collect under the Guaranty of the $80,000.00 Note, no evidence was presented to the Court regarding any fees associated with the collection process.

Therefore, the Court denies Plaintiff's request for attorneys' fees. Plaintiff has not presented any authority that it is entitled to fees stemming from a case it voluntarily nonsuited, and the Court knows of no such authority. Because no evidence was presented concerning fees associated with this current litigation, the Court cannot award fees because there would be no basis for such a finding.

## IV. *Conclusion*

For the foregoing reasons, the Court rules in favor of the Plaintiff in the amount of $34,310.00. This amount represents Dr. Leipzig's liability of the principal amount of $20,000.00 plus interest under the Guaranty attached to the $80,000.00 Note that Union bought in 1995. Based on the evidence as presented, Union properly acquired the $80,000.00 Note and the Guaranty.