# Richmond

J. B. BOURNE v. BOARD OF SUPERVISORS OF HENRICO COUNTY.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*Williams & Mullen, Guy B. Hazelgrove* and *Ralph T. Catterall,* for the plaintiff in error.

*Harold M. Ratcliffe* and *William C. Miller, Jr.,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is a proceeding for a writ of mandamus instituted by plaintiff in error, J. B. Bourne, in the Circuit Court of Henrico county, against the board of supervisors of that county.

The petition for the writ alleges that pursuant to the provisions of chapter 161 of the Acts of 1926, as amended (chapter 65A, Michie's Code, 1930), an order was entered by said court creating a sanitary district in Henrico county, designated as "Sanitary District No. 2"; that all the statutory requirements for the creation of said sanitary district were fully complied with, and thereafter an election was ordered and held according to the provisions of said act to take the sense of the qualified voters of said sanitary district on the question of whether the board of supervisors shall issue bonds to carry into effect the purposes for which said sanitary district was created, as prescribed by said act; that said election resulted in a large majority in favor of the issuance of said bonds, and the same being regularly certified to the court, as required by the statute, the court duly made an order directing the board of supervisors to proceed to carry out the wishes of the voters as expressed at said election, but the board of supervisors refused to obey said order and issue the bonds.

The petition then prays that a writ of mandamus be awarded compelling said board of supervisors to comply with the mandate of the voters and said order of the court as above set forth, and forthwith issue bonds in such

amount as may be necessary for the purposes enumerated in the act aforesaid. The board of supervisors demurred to the petition on the ground that the act referred to is in conflict with section 115a of the State Constitution. The trial court sustained the demurrer and dismissed the petition, which ruling presents the sole question to be considered by this court.

Section 115a of the Constitution provides:

"No debt shall be contracted by any county, or by or on behalf of any school district in any county, except in pursuance of authority conferred by the General Assembly by general law; and the General Assembly shall not authorize any county, or any district of any county, or any school board of any county, or any school district in any county, to contract any debt * * * unless in the general law authorizing the same provision be made for the submission to the qualified voters of the proper county or district, for approval or rejection, by a majority vote of the qualified voters voting in an election, of the question of contracting such debt; and such approval shall be a prerequisite to contracting such debt. * * *"

Section 5 of the Acts of 1926, Code, section 1560e, provides as follows:

"The circuit court of such county, or the judge thereof in vacation, upon the petition of a majority of the board of supervisors of said county, or upon the petition of fifty qualified voters residing in said sanitary district, shall make an order requiring the judges of election, at the next election of county officers, or at any other time not less than thirty days from the date of such order, which shall be designated therein, to open a poll and take the sense of the qualified voters of the said sanitary district or districts on the question whether the board of supervisors shall issue bonds for said purposes."

Section 10 of the aforesaid act, as amended by Acts 1927 (Ex. Sess.), ch. 3, Code, section 1560j, which prescribes the method to be pursued by the board of supervisors in issuing and making sale of the bonds therein

provided for, directs that the said bonds "shall have written or printed in ink the following sentence: 'These bonds are issued for the construction and operation of a public * * * system in * * * sanitary district, but the full faith and credit of the entire county of * * * is hereby pledged for their payment.' "

It is contended on behalf of the board of supervisors that the effect of this provision of the statute is to create a debt on the part of the county, upon which question, under the provisions of section 115a of the Constitution, the qualified voters of the entire county are entitled to express their wishes at an election held for the purpose, and, therefore, section 5 of the act, which limits the election upon the question of issuing the bonds to the qualified voters of the sanitary district alone, is in violation of said constitutional provisions.

The first part of section 115a of the Constitution provides that no debt shall be contracted by or on behalf of a county or district except in pursuance of authority conferred by the General Assembly by general law. With that provision we now have no concern. The second part of said section which is here invoked, prohibits the General Assembly from authorizing any county or district to contract a debt (with certain exceptions) unless in the general law authorizing the same provision be made for submitting the question of contracting such debt to the qualified voters of the proper county or district, for their approval or disapproval. The contention of appellee, then, resolves itself into the simple question of whether, in view of the above quoted provision of the statute, the issuance of the proposed bonds would constitute the *contracting of a debt* by the county which comes within the purview of the Constitution, and requires a vote of the electorate of the whole county to approve it.

Looking at the act in question we find that authority to construct, maintain and operate water supply, sewerage and other systems for the benefit of the people of a sanitary district created under the act is vested solely in the

board of supervisors of the county in which the said sanitary district is located. Said board is also given exclusive authority to fix, and provide for the collection of, the rates of charges for the use of any system or systems so constructed. The act further provides that the maximum amount of bonds issued by the board of supervisors for such purposes shall in no case exceed eighteen per centum of the assessed value of all real estate in the sanitary district subject to local taxation; that the net revenue derived from the operation of said system or systems shall be set apart by said board to pay the interest on the bonds issued, and to create a sinking fund to redeem the principal of said bonds at maturity, and that, if necessary for the payment of such interest or to increase the sinking fund, the board of supervisors shall levy an annual tax upon all the property in such sanitary district, subject to local taxation, to pay such interest and to make such payments into the sinking fund.

■ Considering the above provisions it is apparent that, although section 10 of the act requires that the credit of the county shall be pledged for the payment of the bonds issued thereunder, it was the purpose of the legislature to make the sanitary district for whose benefit such bonds are issued primarily liable for their payment, and that the county shall be only secondarily liable, as guarantor of said bonds. This being the manifest legislative intent, it necessarily follows that, in order to carry out such intent, and also in accordance with established legal principles, the issuance of such bonds must be considered as a debt contracted by the sanitary district alone, within the meaning and purpose of the Constitution, and not as that of the county, which, under the provisions of the statute, could not be deemed a party to the contracting of such debt.

In the case of *Goodrich Rubber Co.* v. *Fisch,* 141 Va. 261, 127 S. E. 187, 188, Chief Justice Campbell, in defining a guaranty, quotes a distinguished law writer as follows:

"A guaranty is an independent contract, by which the

guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform."

In 12 R. C. L. p. 1053, the nature of a guaranty is thus defined: "Generally a guaranty relates to the payment of a sum of money or the collectability thereof, though it may constitute an assurance of the genuineness of an obligation or the liability of the obligee. Being a collateral engagement for the performance of the undertaking of another, it imports the existence of two different obligations, one being that of the principal debtor and the other that of the guarantor. If there is no obligation on the part of the principal, there is none on the guarantor. But the debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The guaranty is a separate and independent contract, involving duties and imposing responsibilities very different from those created by the original contract to which it is collateral. The fact that both contracts are written on the same paper or instrument does not affect their separate nature."

In view of these considerations, we think it clear that section 5 of the act, providing that the question of the issuance of bonds for the purposes of a sanitary district shall be submitted to the qualified voters of such district, fully complies with the constitutional provision on the subject, and its validity should, therefore, be sustained.

To hold that the Constitution requires the question to be submitted to the qualified voters of the entire county for approval would, in effect, practically nullify the act, and thereby defeat the salutary purpose for which it was designed.

There is a presumption that the legislature in the passage of an act intended that it should be effective, and if such an act is susceptible of two constructions, one of which would render the act invalid as being in violation of the Constitution, and the other sustain the validity

of the act, the latter will be adopted upon the presumption that the legislature intended that construction to be given to the act that would make it effective. *Harvey* v. *Hoffman,* 108 Va. 626, 62 S. E. 371; *White & Co.* v. *Jordan,* 124 Va. 465, 98 S. E. 24; *Eureka Pipe Line Co.* v. *Hallanan,* 87 W. Va. 396, 105 S. E. 506.

The rule that every presumption is to be made in favor of the constitutionality of a statute, and it can never be declared unconstitutional except when it is plainly and clearly so; and that a reasonable doubt as to its constitutionality must be resolved in favor of the law, is too well established to require the citation of authority. *Richmond* v. *Pace,* 127 Va. 274, 103 S. E. 647; *State Highway Com'r* v. *Kreger,* 128 Va. 203, 105 S. E. 217.

For the foregoing reasons we are of the opinion that the judgment of the trial court in sustaining the demurrer and dismissing the petition should be reversed, and the proceedings remanded to the court below with directions to award the writ of mandamus as prayed for in the petition.

*Reversed and remanded.*