Herman COHEN

v.

MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 71 et al. and Casco Bank & Trust Company.

Supreme Judicial Court of Maine.

Nov. 10, 1978.

---

Murray, Plumb & Murray by Peter L. Murray, Portland (orally), for plaintiff.

Drummond, Woodsum, Plimpton & MacMahon by Hugh G. E. MacMahon, Portland (orally), for S.A.D. 71.

Thompson, Willard & McNaboe by U. Charles Remmel, III (orally), David M. Hirshon, Portland, for defendants.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

This is the third occasion in which Mr. Cohen has appeared before this court seeking declaratory and injunctive relief in a matter involving the issuance of bonds for the construction of a new high school and reconstruction of the present high school and junior high school of M.S.A.D. 71. *See Cohen v. Maine School Administrative District No. 71,* Me., 369 A.2d 624 (1977); *Cohen v. Ketchum,* Me., 344 A.2d 387 (1975).

Mr. Cohen had asked this court to rule upon a Superior Court justice's dismissal of Count II of his complaint and entry of judgment thereon pursuant to M.R.Civ.P. 54(b), from which he had appealed. We held that the dismissal of Count II should not have been a dismissal with prejudice. Since nothing within the record established whether or not the issuance of M.S.A.D. 71's notes was prior to approval of the project by the Commissioner of Education, the plaintiff might have been able to amend his complaint to state a good cause of action. *Cohen v. Maine School Administrative District No. 71, supra.*

The Superior Court entered an order pursuant to the foregoing decision in which it granted the plaintiff twenty days in which to amend Count II of his complaint. Within the twenty days the plaintiff filed an amendment in which he alleged that although the State Board of Education had approved the proposed project of M.S.A.D. 71 on October 10, 1974, the approval had lapsed (lapse theory).

The defendants renewed their 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted. The plaintiff, however, moved to further amend Count II of his complaint in order to allege that the 1974 approval of the Board of Education had been contingent upon the fulfillment of certain specified conditions (conditional approval theory). The Superior Court denied defendants' motion to dismiss and allowed the second amendment.

After generally denying the allegations of plaintiff's amended complaint, the defendants filed motions for summary judgment pursuant to M.R.Civ.P. 56 and supported by an affidavit of Leo Martin, Superintendent of M.S.A.D. 71,[1] which incorporated a letter dated September 2, 1977, from H. Sawin Millett, Jr., Commissioner of the Department of Educational and Cultural Services. The justice below granted summary judgment for the defendants and directed entry of final judgment pursuant to M.R.Civ.P. 54(b), from which the plaintiff brings the present appeal.

We deny the appeal.

---

1. The appellant submitted a counter affidavit in which he set forth no specific facts admissible in evidence which would demonstrate the existence of a genuine issue for trial.

The sole issue on appeal is whether the presiding justice was correct in finding no genuine issue of material fact regarding the existence of an effective approval by the State Board of Education of the M.S.A.D. 71 project. We believe he was.

### Lapse Theory

We can readily dispense with appellant's lapse theory. He contends that the 1974 approval of the M.S.A.D. 71 project by the State Board of Education was no longer effective due to the passage of an unreasonable time conjoined with the policies and regulations of the State Board of Education and Department of Educational and Cultural Services that limit the validity of approvals. The letter from H. Sawin Millett, Jr., stated:

> [A]ll the conditions imposed by the State Board of Education on October 10, 1974, have now been met and the project has the approval of the State Department of Educational and Cultural Services subject to review of the final plans and specifications.

■ This letter as a statement of the project's *continued* approval according to the policies and regulations of the Department stands unrefuted. The appellant, however, asserts that the justice below erred in considering this letter because it is hearsay. Although the appellant did not move to strike the letter, within his memorandum in opposition to summary judgment he stated that the exhibits attached to appellees' supporting affidavits were "*unsworn and uncertified.*" Assuming this cas-

ual statement was sufficient to preserve the issue for appeal, the letter was nevertheless admissible since it is not hearsay. The letter is a legally operative document that stands by itself as the approval of the Commissioner of the Department of Educational and Cultural Services and is expressly required by statute, 20 M.R.S.A. § 3457 (*see* n.2 *infra*), in order that a school administrative district or other unit may receive reimbursement for approved school construction. Since it is the Commissioner's act in declaring that the project has approval which is made relevant by statute, and not the truth or falsity of the statement, the letter is not hearsay. *See Creaghe v. Iowa Home Mutual Casualty Co.*, 323 F.2d 981 (10th Cir. 1963); *Gyro Brass Mfg. Corp. v. United Auto. A. & A. Imp. Wkrs.*, 147 Conn. 76, 157 A.2d 241 (1959); Field & Murray, *Maine Evidence*, § 801.3; *McCormick on Evidence*, § 249 (2d ed.).

### Conditional Approval

■ Although the 1974 approval of the State Board of Education was conditioned upon M.S.A.D. 71's compliance with three requirements, whether the conditions were in fact fulfilled was not an issue germane to the summary judgment proceeding. There is no suggestion that this approval has ever been withdrawn, amended or revised by the Board. Only the determination of the Commissioner of Education, who is statutorily charged with reviewing operative compliance of the project as approved, was relevant to absolute approval for ultimate payment. 20 M.R.S.A. § 3457.[2] The letter of

2. The statutory scheme for granting authorization for state aid for school construction prior to July 1, 1977, called for the initial approval of the plan by the State Board of Education. The Commissioner of the Department of Educational and Cultural Services thereafter was charged with the responsibility for overseeing compliance with those plans. 20 M.R.S.A. § 3457 provides:

> Any unit shall, before becoming eligible for school construction aid, obtain approval from the State Board of Education of the site upon which the school construction project is to be located. Failure to obtain such approval of site will make the unit ineligible for school construction aid. In addition the board shall require that all projects approved for state aid under this section shall show evidence of the need for such facilities based on obsolescence or inadequacy of present buildings, assurance that existing facilities are receiving maximum use, enrollment projection for at least a 5-year period, financial ability of the unit, utilization studies and other information including but not limited to estimates of operating costs and effectiveness of educational programs related to proposed construction. In addition, projects approved for state aid shall show evidence that spaces within proposed structures shall be assigned a specific educational purpose, or are supportive of the educational program.

September 2, 1977, from the Commissioner contained a statement of satisfaction with M.S.A.D. 71's fulfillment of those conditions. Appellant did not refute this letter with any competent evidence. No material issue of fact therefore was left to be tried, and the presiding justice properly rendered summary judgment for the defendants.

The entry is:

Appeal denied.

McKUSICK, C. J., and DELAHANTY, J., did not sit.

NICHOLS, Justice (dissenting).

I respectfully dissent from the judgment entered this day.

The Plaintiff, Herman Cohen, a Kennebunk voter and taxpayer, commenced this proceeding November 19, 1975, in Superior Court in York County. He challenges the legal sufficiency of the approval for state aid of a $4,330,000 school construction and school remodeling project proposed for that town by the Defendant, Maine School Administrative District No. 71. In this proceeding he seeks a judgment declaring that the conditions attached to approval for state aid by the State Board of Education pursuant to the provisions of 20 M.R.S.A. § 3458 have not been met, and that, therefore, no valid bonds can be issued by the District to the Defendant, Casco Bank & Trust Company, to fund the project.

In September, 1977, the two Defendants moved for summary judgment pursuant to Rule 56, M.R.Civ.P. Asserting that there was no genuine issue as to any material fact and that they were entitled to judgment as a matter of law, the Defendants based their respective motions upon the pleadings and the affidavit of Leo G. Martin, dated September 27, 1977.

It appears that the affiant had become the Defendant District's Superintendent of Schools on June 13, 1977, which was long after the underlying controversy had developed.

The issue on this appeal is whether the Superior Court erred on October 27, 1977, when it granted summary judgment to both Defendants.

20 M.R.S.A. § 3457 provides that any unit, such as the Defendant District, which signs a contract for construction and begins construction before the building plans have been *finally approved* by the State Board of Education shall become ineligible for school construction aid on that particular project. Here the approval given by that Board to the Defendant District on October 21, 1974, was a conditional one. Originally it had been an express condition of that approval that "Department of Environmental Protection approval and sources of funding for the sanitary line must be determined prior to any state assistance for project design and construction."

It appears that, on August 12, 1976, this same Board voted to allow the Defendant District, in lieu of connecting to a sanitary line as specified in that condition, to substitute a package treatment plant. This new condition was expressly made subject to the

20 M.R.S.A. § 3457 additionally provides:
No financial assistance shall be paid until the school construction has been completed and a full report of the cost of said construction and other expenses for major capital outlay purposes is made *to the commissioner.* The report shall be in such form *as the commissioner* shall determine . . . . On the basis of all the reports on file in the office of the commissioner each year, *the commissioner shall determine* the total amount to be paid to all of the School Administrative Districts and other eligible administrative units, for major *capital* outlay purposes, *and shall apportion* out of moneys appropriated for this purpose, when payments are due, to the School Administrative Districts and other eligible administrative units, the same percentage of each administrative unit's expenditures for major capital outlay purposes including principal and interest payments and any rental payments under lease agreements between the administrative units and the Maine School Building Authority as each administrative unit would be entitled to receive based on Table II of this section. (emphasis supplied)

The conditions of approval established by the Board of Education can be considered as analogous to amendments to the M.S.A.D. 71's submitted plans, compliance with which is essential, not for approval of the project, but for eventual reimbursement.

further conditions that "the Department of Environmental Protection grant approval to the new system," and that "this change will be accomplished within the approved project budget."

In this proceeding the facts which are of critical importance are whether the stated conditions have been met.

In pressing their parallel motions for summary judgment the Defendants offered no evidence in proof of these critical facts other than the Martin affidavit, to which was appended a letter, dated September 2, 1977, not sworn to and not certified, by the Commissioner of Educational and Cultural Services, asserting (in part upon the basis of certain letters he had reviewed) the Commissioner's opinion that all the Board's conditions had been met.

The majority lays great store by that letter. Although this proceeding was commenced in part to determine whether the conditions imposed by the State Board of Education had been fulfilled, the majority now decides that such was not an issue germane to the summary judgment proceeding. It asserts that the Commissioner "is statutorily charged with reviewing operative compliance of the project as approved." It declares that the letter offered here effectively disposed of any issue as to fulfillment of the conditions imposed by the Board.

I respectfully disagree.

The majority relies upon the provisions of 20 M.R.S.A. § 3457. After the school construction has been completed and a full report made, that statute authorizes the Commissioner to determine the total amount of state aid to be paid to the District.

Approval of a building project, however, is one thing; determination of compliance with approved plans is another. The majority attempts to equate the two.

The former is a discretionary act, entrusted by the Legislature to the Board. The latter is a ministerial act, to be performed by the Commissioner.

It was noted above that the Legislature made "final approval" by the Board before construction an express condition of state aid. It may be further noted that the Legislature requires that, for the District to obtain payment of state aid, it must first submit to the Commissioner "proof that the project has been completed in accordance with approved plans." 20 M.R.S.A. § 3450 There is no indication in the statute that the Legislature intended to delegate to the Commissioner the power to make "final approval" out of that which, in this case, had been a conditional approval by the Board.

The fulfillment of the conditions imposed by the Board, therefore, remained issues of fact in the case.

The Defendants offered no admissible evidence of approval by the Department of Environmental Protection.

They offered no admissible evidence as to whether the change to a package treatment plant could be accomplished within the approved project budget.

They offered no admissible evidence of Board action relative to the conditions it had expressly imposed upon the Defendant District.

Notwithstanding such a cavalier approach by the Defendants to the proof of critical facts, their motions for summary judgment were granted in the Superior Court.

That was error.

When a motion for summary judgment is supported by affidavit, M.R.Civ.P. 56(e) establishes certain requirements which are highly pertinent here. (1) The affidavit shall be made upon personal knowledge. (2) It shall set forth such facts as would be admissible in evidence. (3) It shall show affirmatively that the affiant is competent to testify to the matters stated therein. (4) Copies of all papers referred to in the affidavit shall be sworn to or certified and shall be attached thereto or served therewith.

These requirements were not met in the case at bar.

The crucial importance of these requirements was underscored by our Court a decade ago when an employee who had been

awarded compensation, and who had received a lump-sum settlement of a claim arising out of a work-related injury, undertook a malpractice action against the treating physician. As affirmative defenses the physician pleaded that the employee had elected to receive compensation and had failed to make demand upon the employer or its compensation carrier to pursue remedial action against the physician as the Workmen's Compensation Act then required. When upon such pleadings the physician moved for summary judgment, the motion was supported by his attorney's affidavit as to the records in the office of the Industrial Accident Commission, and as to his analysis there and conclusions therefrom. Upon appeal from the granting of this motion for summary judgment, our Court sustained the appeal, held that a mere certificate or affidavit of a certifying officer or other witness knowledgeable of the record, stating the existence of the record and what it purports to show, is never receivable as evidence unless made so by statute, and further declared:

> The Court, before which it is produced, should be in the position to inspect the record and decide what it contains and proves. The construction of the record and its import must be left to the Court and not entrusted to the certifying officer or witness. *Steeves v. Irwin*, Me., 233 A.2d 126, 130 (1967).

The same rule should govern in the case at bar.

Here the affiant, Martin, averred that the Commissioner had "determined" that the Board's conditions had been satisfied.

In fact, the Commissioner's letter of September 2, 1977, which is hearsay at best, written after he had reviewed two letters which passed between other individuals, states that the Commissioner "believes" the second of the Board's conditions has been satisfied. Such a statement upon belief fails to satisfy our rule.

Even if the Commissioner's letter is taken as declaring that the Board's conditions have been satisfied, the Court should, as was said in *Steeves*, be put in the position to inspect the record of the agencies here involved and to determine whether the conditions have in fact been satisfied. The import of the record must not be entrusted to a witness.

Additionally, the documents appended to the Martin affidavit were neither certified nor sworn to as required by Rule 56(e), M.R.Civ.P.

Summary judgment is, as our Court recognizes, "an extreme remedy which should be cautiously invoked." *Cardinali v. Planning Bd. of Lebanon*, Me., 373 A.2d 251, 255 (1977).

In that spirit of restraint, and applying the rule laid down so clearly in *Steeves v. Irwin, supra*, the Plaintiff's appeal should, I submit, be sustained.