Present:  All the Justices

ROGER J. MCDONALD

v. Record No. 001773    OPINION BY JUSTICE CYNTHIA D. KINSER
                                        June 8, 2001
NATIONAL ENTERPRISES, INC.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

National Enterprises, Incorporated (NEI), filed an action against Roger J. McDonald on a Guaranty Agreement that McDonald had executed in 1988 to secure a loan to Lafayette Associates, a Virginia general partnership. McDonald was one of two partners in Lafayette.[1]  After the close of the evidence during a jury trial, the circuit court granted NEI's motion to strike McDonald's evidence and its motion for summary judgment.  After considering McDonald's post-trial motions, the court entered judgment in favor of NEI in the amount of $462,839.60, together with interest at the judgment rate.  Based on an affidavit from NEI's counsel, the court also awarded NEI attorney's fees and costs in the amount of $14,834.  McDonald appeals.

On appeal, McDonald contends that the circuit court erred in entering judgment for NEI on the Guaranty Agreement because NEI was not in possession of the original note evidencing the primary obligation, and because

_____

[1] Lawrence T. Phillips was the other partner.

liability on that note had been adjudicated in favor of the maker of the note in a prior action filed by NEI. McDonald further claims that the circuit court erred by ruling, as a matter of law, that the statute of limitations did not bar the present action on the Guaranty Agreement. Finally, in his last two assignments of error, McDonald challenges the admissibility of certain documents and the award of attorney's fees to NEI. Because we find no error in the judgment of the circuit court on these issues, we will affirm that judgment.

## FACTS

On October 3, 1988, Lafayette obtained a loan from Seasons Mortgage Corporation.[2] That indebtedness was evidenced by a Deed of Trust Note (the Note) executed by McDonald and Phillips as the general partners of Lafayette.[3] McDonald and Phillips, in their individual capacities, also signed a Guaranty Agreement bearing the same date. In that agreement, they unconditionally guaranteed "full and prompt

---

[2] Seasons Mortgage Corporation is a wholly owned subsidiary of Seasons Federal Savings Bank, formerly Seasons Savings Bank.

[3] Lafayette, through its general partners, also executed a Deed of Trust and Security Agreement to secure payment of the Note.

payment . . . of all obligations payable by" Lafayette

pursuant to the Note.

In October 1989, the Resolution Trust Company (RTC)

was appointed as the receiver for Seasons Savings Bank.[4]

Subsequently, RTC sold a package of loans and collateral to

NEI.  As evidenced by a Bill of Sale and Assignment of

Loans dated December 15, 1992, the loan and Guaranty

Agreement at issue in this case were included in that

package.[5]

After that purchase, NEI filed an action against

Lafayette, the maker of the Note, and against McDonald and

Phillips, as the guarantors.  The circuit court denied

Lafayette's motion to dismiss that action, but in an order

dated August 25, 1998, the court granted NEI's motion to

nonsuit the case.  However, in that order, the court stated

that, "[i]n the event of any refiling[,] . . . the

---

[4] As receiver for Seasons Savings Bank, RTC received authorization to incorporate and issue a federal charter as Seasons Federal Savings Bank.  RTC was then appointed as the conservator for Seasons Federal Savings Bank.

[5] In January 1992, prior to NEI's purchase of the loan package, RTC foreclosed on the property secured by the Deed of Trust.  RTC then sold the outstanding balance on the loan to NEI.

plaintiff shall be allowed to proceed on the guarantee, but not on the note."[6]

NEI filed the present action on September 21, 1998, naming only McDonald as a defendant. NEI alleged that RTC had conveyed its interest in the loan evidenced by the Note and Guaranty Agreement to NEI, and that McDonald was indebted to NEI under the Guaranty Agreement. McDonald defended the action primarily on the grounds that the statute of limitations had expired, and that NEI cannot proceed on the Guaranty Agreement since NEI is not in possession of the original Note. Finally, McDonald argued that the first action was resolved on the merits in favor of Lafayette and that, therefore, NEI is precluded from pursuing this cause of action on the Guaranty Agreement. The circuit court denied McDonald's motions based on these defenses. In entering judgment for NEI, the court accepted the testimony of McDonald's sole witness regarding the amount due and owing on the primary obligation guaranteed by McDonald.

## ANALYSIS

### I. POSSESSION OF NOTE AND DISPOSITION OF PRIOR ACTION

---

[6] NEI obtained a default judgment against Phillips in that first action.

McDonald's first two assignments of error, concerning the fact that NEI does not have possession of the original Note and the disposition of the first action filed by NEI, involve the relationship between a guaranty contract and the primary obligation. This Court has defined a guaranty as "an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform." B.F. Goodrich Rubber Co., Inc. v. Fisch, 141 Va. 261, 266, 127 S.E. 187, 188 (1925); accord American Indus. Corp. v. First & Merchants Nat'l Bank, 216 Va. 396, 398, 219 S.E.2d 673, 675 (1975); Bourne v. Board of Supervisors, 161 Va. 678, 683-84, 172 S.E. 245, 247 (1934). In an action to enforce an independent contract of guaranty, the obligee is proceeding on the guaranty, not on the underlying note. Thus, to recover on a guaranty, the obligee must establish, among other things, the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract. Delro Indus., Inc. v. Evans, 514 So.2d 976, 979 (Ala. 1987); Torrey Pines Bank v. Superior Court,

5

216 Cal. App. 3d 813, 819 (Cal. Ct. App. 1989); Stewart Title Guar. Co. v. WKC Restaurants Venture Co., 961 S.W.2d 874, 880 (Mo. Ct. App. 1998); Wiman v. Tomaszewicz, 877 S.W.2d 1, 8 (Tex. App. 1994); cf. Bowman v. First Nat'l Bank, 115 Va. 463, 466, 80 S.E. 95, 96 (1913) (averments that defendant, for consideration, guaranteed payment of notes were sufficient to imply that plaintiff was owner and legal holder of notes).

Accordingly, in the present case, the circuit court did not err in failing to dismiss this action because NEI did not have possession of the original Note.  In arguing otherwise, McDonald confuses the difference between the enforceability of the Note against Lafayette, the maker of that Note, and the question whether the debt has been extinguished, i.e., whether there is an obligation on the part of Lafayette.  The non-enforceability of a note as to the maker does not necessarily extinguish the obligation. See Fidelity & Cas. Co. v. Lackland, 175 Va. 178, 187, 8 S.E.2d 306, 309 (1940) (running of statute of limitations against primary obligor does not extinguish debt of guarantor).  However, if there is no obligation on the part of the principal obligor, then there is also none on the guarantor.  Bourne, 161 Va. at 684, 172 S.E. at 247.

In the present case, NEI established the existence of the Guaranty Agreement executed by McDonald, the terms of the primary obligation, Lafayette's default on that obligation, and McDonald's failure to pay the amount due under the Guaranty Agreement. Notably, McDonald has never asserted that the primary indebtedness has been paid. His only witness at trial, an attorney who practices in the area of real estate foreclosures and related fields, testified that the original Note evidencing the loan from Seasons Mortgage to Lafayette, if it were available, would reflect on its face a credit of $283,654.55 resulting from the foreclosure by RTC. Consequently, he opined that the copy of the Note introduced into evidence did not bear the same information that the original Note would contain. In calculating the amount of the judgment rendered against McDonald, the circuit court accepted this witness's testimony regarding the amount that had been paid on the primary indebtedness.

As to the effect of the disposition of the first action on the present one, McDonald took inconsistent positions before the circuit court in this case with regard to the outcome of that first action. In a pre-trial memorandum, McDonald stated that, in the first case, "NEI . . . non-suited its claim against Lafayette Associates,

the alleged maker of the note, and Roger J. McDonald, the alleged guarantor of the note." Later, in a post-trial memorandum, McDonald asserted that "Lafayette Associates, which was sued on the alleged note[,] won on its defenses and was dismissed with prejudice by the final order." "A litigant cannot assume positions which are inconsistent with each other and mutually contradictory." McLaughlin v. Gholson, 210 Va. 498, 501, 171 S.E.2d 816, 818 (1970).

Irrespective of McDonald's inconsistency, we do not believe that there was an adjudication in the first action with regard to the question whether the primary obligation, through payment or otherwise, has been extinguished. The circuit court's order dated August 25, 1998, clearly nonsuited NEI's cause of action. Although the court also stated that, in any future case, NEI could proceed only on the Guaranty Agreement, that statement was not an adjudication that the primary obligation had been satisfied. Thus, we conclude that the court's disposition of NEI's first case does not preclude this action to enforce the Guaranty Agreement against McDonald.

## II. STATUTE OF LIMITATIONS

With regard to his plea of the statute of limitations, McDonald presents two theories in support of that defense. Relying on the Restatement (Third) of Suretyship and

Guaranty § 43 (1996), he states that "where the statute of limitations is a bar to the note, it is a bar to the enforcement of the guaranty." However, in Whitehurst v. Duffy, 181 Va. 637, 648, 26 S.E.2d 101, 106 (1943), this Court stated "that the running of the statute of limitations against the primary obligation did not bar a cause of action on the contract of guaranty or suretyship." See also Lackland, 175 Va. at 187, 8 S.E.2d at 309 (running of the statute of limitations against principal obligor merely bars creditor's remedy, but does not extinguish debt or obligation of guarantor). Thus, this argument has no merit.

McDonald also asserts that the statute of limitations applicable to the Guaranty Agreement itself bars this action. In response, NEI claims that McDonald never presented this argument to the circuit court and that the argument is, therefore, waived under Rule 5:25. We do not agree with NEI.

McDonald affirmatively pled the statute of limitations in his grounds of defense to NEI's motion for judgment. In a memorandum in support of his affirmative defenses, McDonald addressed the applicability of the five-year statute of limitations set forth in Code § 8.01-246(2) and the six-year statute of limitations provided in 12 U.S.C.

§ 1821(d) 14 (A) and (B).  He also discussed the availability of the tolling provision in Code § 8.01-229(E)(3) if NEI relied on the federal statute of limitations.  Finally, during his motion to strike NEI'S evidence after both parties rested, McDonald stated, "the statute of limitations began to run on the guarantee when it began to run on the maker."  Thus, we conclude that McDonald did present this argument regarding the statute of limitations to the circuit court.  Accordingly, we will address the merits of that issue.

In denying McDonald's motion to dismiss based on his plea of the statute of limitations, the circuit court did not articulate the rationale for its decision.  The court did, however, state in its letter opinion dated May 25, 1999, that "[u]nless the plaintiff states to the contrary, I am assuming that [it is] relying on the Virginia Statute of limitations of five years rather than the federal statute."  NEI never advised the circuit court that it was not relying on the five-year statute of limitations contained in Code § 8.01-246(2), nor did it indicate that it was relying on the federal six-year statute of limitations.  Thus, in accordance with the circuit court's direction to NEI, we resolve this issue by applying the five-year statute of limitations.

In Guth v. Hamlet Assoc., Inc., 230 Va. 64, 75, 334 S.E.2d 558, 565 (1985), this Court concluded that a cause of action on the guaranty at issue there accrued at the same time as the statute of limitations began to run on the underlying obligation. Thus, relying on that decision, McDonald argues that the statute of limitations commenced to run on the Guaranty Agreement and the Note at the same time, specifically no later than September 18, 1990. On that date, Seasons Federal sent a letter to Lafayette, advising Lafayette that it was in default and demanding payment in full from Lafayette of all amounts due under the Note. Based on that letter, McDonald argues that the five-year statute of limitations expired before NEI filed the first action in July 1996, thus barring the present action because NEI would not be entitled to the tolling provision in Code § 8.01-229(E)(3) after it nonsuited the first case. However, we do not accept McDonald's premise that NEI's cause of action on the Guaranty Agreement accrued in September 1990.

This Court has recognized that the statute of limitations on a guaranty may or may not start to run at the same time as that on the underlying obligation. Compare Guth, 230 Va. at 75, 334 S.E.2d at 565 (cause of action on guaranty accrued at same time as statute of

11

limitations began to run on underlying obligation), with Whitehurst, 181 Va. at 646-47, 26 S.E.2d at 105 (cause of action on note and guaranty did not accrue at the same time).  In the present case, the circuit court never specified the date upon which the five-year statute of limitations commenced to run.  However, in order to deny McDonald's plea of the statute of limitations, the court necessarily had to decide that the statute did not commence to run in September 1990, as argued by McDonald.  And, we conclude that the court was correct.

Under the terms of the Guaranty Agreement, McDonald agreed to pay all sums owed by Lafayette when in default "upon demand by the Lender, without notice other than such demand and without the necessity for additional action by the Lender."  (Emphasis added).  Thus, under the terms of the Guaranty Agreement, McDonald was not required to pay until Lafayette defaulted and the obligee demanded payment from McDonald.  See Piedmont Guano & Mfg. Co. v. Morris, 86 Va. 941, 945, 11 S.E. 883, 884 (1890) ("guarantor . . . is usually not responsible unless notified of the default of the principal").  Accordingly, we hold that the five-year statute of limitations did not begin to run on the claim under the Guaranty Agreement until a demand was made to McDonald for payment.  See United States v. Vanornum, 912

12

F.2d 1023, 1027 (8th Cir. 1990); Western Bank v. Franklin Dev. Corp., 804 P.2d 1078, 1080 (N.M. 1991); Ocean Transp., Inc. v. Greycas, Inc., 878 S.W.2d 256, 267 (Tex. App. 1994).

As the proponent of the bar of the statute of limitations, McDonald had the burden of proving the date on which the statute commenced to run. Brown v. Harms, 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996). Based on the record before us, a demand to McDonald was not made until September 11, 1991. At that time, an asset manager for the loan at issue sent a letter to McDonald, advising that payments under the Note were in default and requesting payment from McDonald. That letter, unlike the September 1990 letter that was addressed only to Lafayette, was addressed and sent to McDonald. Thus, we hold, as a matter of law, that the statute of limitations started to run on the claim under the Guaranty Agreement on September 11, 1991. That holding means that NEI filed the first action before the statute of limitations expired. After the nonsuit of that action, NEI filed the present action on September 21, 1998, within the six months afforded under Code § 8.01-229(E)(3). Therefore, the circuit court correctly denied McDonald's plea of the statute of limitations.

13

### III. EVIDENTIARY RULINGS

McDonald next asserts that the circuit court erred by admitting into evidence NEI's Bill of Sale and Assignment of Loans; a copy of the Note; a settlement statement dated October 3, 1988, reflecting the loan to Lafayette; a settlement statement dated July 30, 1992, accounting for the proceeds from the foreclosure by RTC; and an RTC sales transaction report; plaintiff's exhibit numbers one, two, five, six, and seven, respectively. McDonald contends that these documents were inadmissible hearsay evidence because they all contained information not generated by the employees of either NEI or RTC, and were not records kept in the regular course of business by either entity. We find no merit to McDonald's argument with regard to any of these documents.

A senior asset manager for NEI testified that NEI received the Bill of Sale and Assignment of Loans in the consummation of the transaction in which it purchased the package of loans from RTC. As such, that document is an operative legal document that embodies and evidences the conveyance. It was not offered for the "truth" of its averments, but for its legal effect; hence, it was not hearsay. Cf. Remington Investments v. Hamedani, 55 Cal. App. 4th 1033, 1042 (Cal. Ct. App. 1997) ("Promissory Note

document itself is not a business record as that term is used in the law of hearsay, but rather is an operative contractual document admissible merely upon adequate evidence of authenticity"); Cohen v. Maine Sch. Admin. Dist., 393 A.2d 547, 549 (Me. 1978) (letter was legally operative document standing by itself as approval of Commissioner and thus not hearsay); Boyd v. Diversified Fin. Sys., 1 S.W.3d 888, 891 (Tex. App. 1999) (note and guaranty were admissible as operative facts regardless of hearsay status); 2 McCormick on Evidence § 249 at 100 & n.2 (John W. Strong, ed., 5th ed. 1999); 6 John H. Wigmore, Evidence in Trials at Common Law § 1770 at 259-262 (James H. Chadbourn rev. 1976). Therefore, the Bill of Sale and Assignment of Loans was properly admitted into evidence.

As to the other documents, assuming without deciding that the circuit court erred in admitting them into evidence, we conclude that any such errors were harmless. The existence and amount of the loan to Lafayette, as evidenced by the Note and 1988 settlement statement, were also established by other evidence: (1) McDonald's reference to the loan number in a letter dated December 3, 1991;[7] (2) Phillips' signature on the 1988 settlement

---

[7] That letter, plaintiff's exhibit number 12, is not the subject of an assignment of error.  See Rule 5:17(c).

15

statement as a partner of Lafayette; and (3) testimony from McDonald's witness that the foreclosure on the property secured by the Deed of Trust (plaintiff's exhibit number 3), would not have taken place if the loan reflected in the 1988 settlement statement had not been made, and that the loan was in the amount of $425,000. Finally, the 1992 settlement statement and the RTC sales transaction report related to the amount of proceeds received from the foreclosure that were applied to the indebtedness on the Note. Those two documents were not used by the circuit court in calculating the amount owed to NEI. Instead, the circuit court accepted the testimony of McDonald's witness on that issue.

## IV. ATTORNEY'S FEES

The final issue involves the award of attorney's fees and costs to NEI. At the conclusion of the trial, NEI reminded the court that the terms of the Guaranty Agreement provided for recovery of costs and attorney's fees. At that point, McDonald objected and noted that NEI had not presented evidence on that issue. The court agreed and advised NEI that it could "submit something on that." NEI then submitted an affidavit to the court, requesting an award of attorney's fees in the amount of $40,102.25. Based on that affidavit, the court determined the amount of

16

attorney's fees and costs without submitting the issue to the jury.

McDonald now contends that the award was in error because NEI presented no evidence to the jury on its claim for attorney's fees. After NEI filed the affidavit regarding its request for attorney's fees, McDonald objected to the procedure in a letter to the court dated April 11, 2000. In that letter, McDonald reminded the court that he had requested a jury trial and that this issue should be heard and decided by the jury. He also noted that the affidavit contained no detailed time records and that no evidence, expert or otherwise, had been offered during the course of the trial. For those reasons, McDonald argued that attorney's fees should not be awarded.

On brief, NEI references a post-trial hearing during which NEI allegedly presented detailed time records.[8] However, a transcript of that hearing is not part of the record before this Court. Without that transcript, we do not know what evidence and argument, if any, were presented to the circuit court. Nor do we know what position

---

[8] According to the circuit court's order entered on May 15, 2000, a hearing was held on April 28, 2000, which is the date of the court's order setting the amount of attorney's fees and costs awarded to NEI.

17

McDonald took regarding his prior assertion that the matter of attorney's fees should be decided by the jury.

Under Rule 5:10, the record on appeal consists of, among other things, "the transcript of any proceeding or a written statement of facts, testimony, and other incidents of the case when made a part of the record as provided in Rule 5:11." As the appellant in this appeal, McDonald has the burden to present a sufficient record on which this Court can determine whether the circuit court erred as McDonald contends. Wansley v. Commonwealth, 205 Va. 419, 422, 137 S.E.2d 870, 873 (1964). Because McDonald has furnished an insufficient record, the judgment of the circuit court regarding the award of attorney's fees will be affirmed. White v. Morano, 249 Va. 27, 30, 452 S.E.2d 856, 858 (1995).

CONCLUSION

For the reasons stated, we find no error in the judgment of the circuit court and will affirm that judgment.

Affirmed.