Present:  Carrico, C.J., Compton, Stephenson,[1] Lacy, Keenan, and
Koontz, JJ., and Poff, Senior Justice

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

                  OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.

v.  Record No. 961969

                  September 12, 1997

JOHN F. KENDRICK

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

The principal issue in this appeal is whether the trial court erred in admitting evidence of the anticipated cost of, and lost wages related to, future surgery.  By means of an assignment of cross-error, we also determine whether the trial court erred in restricting the testimony of the plaintiff-physician regarding the need for future surgery.

Plaintiff Dr. John F. Kendrick was injured in a motor vehicle collision that occurred on March 9, 1994, on Route 460, in Southampton County.  His injuries were described as "a rotator cuff tear in [his] right shoulder" and "a torn medial meniscus in his left knee."

Dr. Kendrick sued John Doe, an unknown motorist insured by State Farm Mutual Automobile Insurance Company (State Farm).  A jury returned a verdict in favor of Dr. Kendrick and against John Doe in the amount of $100,000, and, by order entered July 2, 1996, the trial court rendered judgment on the verdict.  We awarded State Farm, which filed pleadings in its own name, an appeal and also granted cross-error assigned by Dr. Kendrick.

---

[1]Justice Stephenson prepared the opinion in this case prior to the effective date of his retirement on July 1, 1997, and the Court subsequently adopted the opinion.

To resolve the issues raised by State Farm's assignments of error, we look to portions of the testimony of three witnesses, namely: Dr. William Henceroth, II, Dr. Kendrick, and Gail M. King.

Dr. Henceroth, an orthopedic surgeon and Dr. Kendrick's treating physician, was asked about Dr. Kendrick's future medical treatment. The doctor responded that, based upon his most recent examination of Dr. Kendrick, "no surgery is planned." Dr. Henceroth added, however, that "were [Dr. Kendrick's] condition to worsen, . . . then we would elect to do surgery."

Thereafter, over State Farm's objection, Dr. Henceroth was allowed to testify about the cost of knee and shoulder surgery and the amount of time Dr. Kendrick would be out of work if surgery were performed. Dr. Henceroth stated that the arthroscopic knee surgery would cost $1,500 and the rotator cuff surgery would cost approximately $2,000. He further stated that, in the event of knee surgery, Dr. Kendrick would be unable to work for two to three weeks, and, in the event of shoulder surgery, Dr. Kendrick would miss four to six weeks of work.

Dr. Kendrick, whom the trial court had qualified as an expert witness in the field of medicine, testified that he had no present plans to have surgery on either his knee or shoulder. He stated, however, that his condition was getting worse and that he was "seriously considering" surgery.

Over State Farm's objection, Gail M. King, a hospital

billing supervisor, was permitted to testify regarding hospital charges for surgery.  She estimated that the hospital charges for rotator cuff surgery would be $6,500 and the charges for arthroscopic knee surgery would be $6,200.

State Farm contends that the trial court erred in admitting evidence of the expense of future surgery and of the resultant income loss.[2]  In allowing this evidence and in refusing to set aside the jury's verdict, the trial court had found that the evidence was sufficient for the jury's consideration because it had indicated that Dr. Kendrick "might" need surgery in the future.

> We think the trial court erred.
> A medical opinion based on a "possibility" is irrelevant, purely speculative and, hence, inadmissible.  In order for such testimony to become relevant, it must be brought out of the realm of speculation and into the realm of reasonable probability; the law in this area deals in

---

[2] Dr. Kendrick contends that State Farm is procedurally barred from raising these issues on appeal because it failed to object to the damages instruction which submitted these issues to the jury.  We do not agree.

The record shows that State Farm objected to the introduction of evidence of the expense of future surgery and the resultant income loss.  Further, State Farm, at the conclusion of Dr. Kendrick's evidence and again at the conclusion of all the evidence, moved to strike the claim for future damages.  Finally, following the verdict, State Farm moved to set aside the verdict on the ground that the evidence did not support an award of future damages.

In order for a procedural waiver to apply, the record must show that a litigant invited a trial court to commit error, either by failing to object or by agreeing to the ruling.  See Wright v. Norfolk and Western Railway Co., 245 Va. 160, 170, 427 S.E.2d 724, 729 (1993).  It is clear from the record in the present case that the trial court was fully aware throughout trial of State Farm's contention.

"probabilities" and not "possibilities."

Fairfax Hospital System v. Curtis, 249 Va. 531, 535, 457 S.E.2d 66, 69 (1995) (quoting Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980)).

In the present case, the evidence, when viewed in the light most favorable to Dr. Kendrick, merely suggested the possibility of future surgery. This evidence was too speculative to form a basis for allowing the jury to consider damages for future surgery expenses and for future lost wages.

We next consider Dr. Kendrick's assignment of cross-error. He contends that the trial court erred in restricting his testimony about the need for future surgery.

During Dr. Kendrick's direct examination, his counsel asked whether, "to a reasonable degree of medical probability," he would need surgery on his shoulder and knee by 1996. The trial court sustained State Farm's objection and refused to permit Dr. Kendrick to answer the question, reasoning that the answer would be "self-serving."[3] The trial court also reasoned that the testimony was inadmissible "because [Dr. Kendrick's] not going to operate." We think the trial court erred.

As previously noted, Dr. Kendrick had been qualified as a medical expert. Consequently, even though he was a party in interest and he was not to perform the surgery, he was competent

_____

[3] Dr. Kendrick's counsel previously had vouched the record that Dr. Kendrick would answer the question affirmatively.

- 4 -

to express an opinion about his future medical needs.  <u>See</u> Code § 8.01-396 ("No person shall be incompetent to testify because of interest, or because of his being a party to any civil action.").

For these reasons, we will reverse the trial court's judgment and remand the case for a new trial consistent with the views expressed in this opinion.

<u>Reversed and remanded</u>.