PRESENT: All the Justices

PAMELA K. PETTUS, EXECUTOR OF THE
ESTATE OF REGINALD H. PETTUS, DECEASED

v.  Record No. 040915   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                      January 14, 2005
IRVING S. GOTTFRIED, M.D., P.C., ET AL.

FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Joseph E. Spruill, Jr., Judge Designate

In this appeal, we consider whether the circuit court erred in permitting the defendants to introduce into evidence certain deposition testimony of the decedent's treating physicians.

On March 17, 2000, plaintiff's decedent, Reginald H. Pettus, arrived at Southside Community Hospital (the hospital) in Farmville complaining of chest pain. Dr. Robert B. Evans, an emergency room physician, treated Pettus on his arrival. Dr. Evans administered oxygen to Pettus, gave him nitroglycerin, and ordered several tests, including an electrocardiogram (EKG). Dr. Evans reviewed the EKG results, which showed an "atrial flutter" that was not present on an EKG taken a year earlier. Uncertain whether Pettus should be admitted to the hospital, Dr. Evans called Dr. Irving S. Gottfried, who previously had treated Pettus, and requested that Dr. Gottfried examine him.

Dr. Gottfried is a gastroenterologist who, one year before the events at issue, had reviewed an EKG performed on Pettus. When called to the hospital by Dr. Evans, Dr. Gottfried examined Pettus, evaluated the EKG ordered by Dr. Evans, and released

Pettus with orders to return for a "follow up" appointment on March 20, 2000.

On March 20, 2000, Dr. Girish Purohit, a cardiologist, admitted Pettus to the hospital. Pettus was not experiencing chest pain at the time of his admission. He stayed in the hospital overnight and received an echocardiogram the next morning.

Later that morning, Pettus became restless and began "wheezing." Dr. Purohit altered Pettus's medications and ordered a neurology consultation to evaluate Pettus's mental status. A few hours later, Pettus had a seizure, stopped breathing, and ultimately died.

Pamela K. Pettus (the plaintiff), filed a wrongful death action against Dr. Gottfried and his professional corporation, and certain other defendants,[1] alleging that Pettus died as a result of negligent medical treatment he received at the hospital. The plaintiff contended that Dr. Gottfried incorrectly diagnosed Pettus's chest pain and negligently discharged him from the hospital at the time of an impending myocardial infarction, or heart attack. Dr. Gottfried filed

---

[1] The other named defendants, Drs. Evans and Purohit, and their corporate employers, were dismissed by nonsuit before trial.

grounds of defense, in which he stated that he complied with the applicable standard of care and denied that his conduct caused Pettus's death.

At trial, the plaintiff presented evidence from two physicians who qualified as expert witnesses and testified before the jury. The plaintiff also read into evidence portions of the discovery depositions of Drs. Evans, Purohit, and Gottfried.[2]

Before the defendants presented their case, the plaintiff asked the circuit court to exclude portions of the deposition testimony that Dr. Gottfried had designated for introduction into evidence. The plaintiff objected to the admission of the following testimony by Dr. Purohit:[3]

> Q: And it was your opinion that that was a central nervous system event?
>
> A: It could have been, yes.
>
> Q: Do you have an opinion within the reasonable degree of medical certainty what the cause of Mr. Pettus' death was?
>
> A: No. In fact, that's the reason why many times we feel that unless an autopsy is done, it's really difficult to know what may have happened.

---

[2] Before trial, the parties designated the portions of deposition testimony they intended to introduce.

[3] The plaintiff objected to a second portion of Dr. Purohit's deposition testimony, but does not address that portion on appeal.

The plaintiff argued that this deposition testimony was inadmissible because it was speculative and contained expert opinion testimony that was not stated to a reasonable degree of medical probability. The circuit court overruled the plaintiff's objection, and allowed Dr. Gottfried to read the above testimony to the jury.

The plaintiff also objected to several portions of Dr. Evans's deposition that Dr. Gottfried intended to introduce into evidence.[4] The plaintiff objected to the following exchange:

Q: Do you know whether or not Mr. Pettus was still experiencing chest pain at the time of discharge?

A: I know my nurses, and I'm pretty sure that if he had had chest pain, it would have been brought to either my attention or Dr. Gottfried [sic] attention.

. . . .

Q: Prior to Dr. Gottfried getting to the hospital, had you formed any intention of trying to have Mr. Pettus admitted or running further tests?

A: I felt like he could probably go either way, but it would be best to be evaluated by a person who knew him.

Q: Going either way being what?

A: Possibly an admission, depending on what Dr. Gottfried knew about him versus going home for outpatient follow-up.

---

[4] The excerpt that follows is the only portion of Dr. Evans' deposition that the plaintiff addresses in this appeal.

4

The plaintiff argued that the testimony was speculative, and also contended that the documentation provision of Code § 8.01-399(B) barred its admission. The circuit court overruled the plaintiff's objection, concluding that the testimony was a "complete statement" of Dr. Evans's actions and served to explain matters that were already in evidence.

Dr. Gottfried read all the contested portions of deposition testimony to the jury, and he also testified in his own defense. The jury returned a verdict in favor of Dr. Gottfried and his professional corporation, and the circuit court entered final judgment in accordance with the jury verdict. The plaintiff appeals.

The plaintiff argues that the circuit court erred in admitting into evidence the above-referenced portions of Dr. Purohit's deposition because they were expert opinions that were not stated to a reasonable degree of medical probability. The plaintiff argues that the testimony therefore was speculative, and she further asserts that the testimony failed to meet the provisions of Code § 8.01-399(B) relating to documentation.

The plaintiff also contends that the circuit court erred in admitting the above-referenced segments of Dr. Evans's deposition testimony. The plaintiff argues that Dr. Evans's testimony, that his nurses would have noted any complaint of pain made by Pettus at the time he was discharged, was

5

speculative because Dr. Evans did not have any personal knowledge concerning the nurses' actions. The plaintiff also maintains that the circuit court erred in admitting Dr. Evans's testimony whether he intended to have Pettus admitted to the hospital. She alleges that this testimony was inadmissible because it was speculative and was not supported by documentation in Pettus's medical records.

In response, Dr. Gottfried argues that the plaintiff waived her objection to the admissibility of Dr. Purohit's and Dr. Evans's testimony because she offered testimony of the same character in her case-in-chief. Dr. Gottfried asserts that the plaintiff introduced portions of Dr. Purohit's deposition testimony expressing an opinion concerning the cause of Pettus's death that were not stated to a reasonable degree of medical probability, including the following testimony:

Q:	And what is the significance of myocardial ischemia if in fact the patient had myocardial ischemia?

A:	It just means that there are changes in the electrocardiogram which may reflect that the heart muscle may not be getting enough blood, and therefore, oxygen.

Q:	And one of the causes of not getting enough blood could be –

A:	Coronary artery disease, yes.

. . . .

Q:	And that's the atrial flutter?

6

A: Yes. All these things are written here in the same order, so the reading was atrial flutter and that there are some changes that are subtle, but they do suggest that there may have been a heart attack affecting the inferior wall or the bottom part of the heart.

Regarding Dr. Evans's testimony, Dr. Gottfried asserts that because Dr. Evans's duties included evaluating whether a patient required admission to the hospital, Dr. Evans's deposition testimony on this subject was admissible. Dr. Gottfried also argues that because the plaintiff introduced portions of Dr. Evans's testimony that were not documented in the medical record, the plaintiff has waived her objection to the disputed portions of Dr. Evans's testimony. Dr. Gottfried points to the following exchanges, among others, to illustrate his contention that the plaintiff introduced evidence of the same character as the evidence that she now challenges.

Q: Given nitroglycerine. Does that say with little improvement?

A. Times one with a little improvement.

Q: What significan[ce], if any, did that have for you in making a differential diagnosis?

A: Well, one would expect, although nothing in medicine is absolute, that nitroglycerine would improve cardiac chest pain.

. . . .

Q: Shortness of breath?

A: Uh-huh (yes).

7

    Q:    That would be consistent also with a cardiac
          problem?

    A:    It could.

                           . . . .

    Q:    And what was your interpretation of the EKG?

    A:    That he was in a flutter pattern, had perhaps
          some ischemic changes to his EKG.

    Q:    And where were the ischemic changes located on
          the EKG?

    A:    V1, V2, V3, little bit of V4 and V5.

    Q:    And what was the significance to you of the
          ischemic changes in those areas?

    A:    Well, it could certainly be an indication that
          something cardiac was going on.

Dr. Gottfried also argues that the evidence he introduced from Dr. Purohit's and Dr. Evans's depositions complied with the requirements of Code § 8.01-399(B). Dr. Gottfried asserts that both doctors testified as Pettus's treating physicians rather than as expert witnesses and did not discuss a diagnosis. Thus, Dr. Gottfried contends that their testimony was not required to meet the standard of a reasonable degree of medical probability. Dr. Gottfried also maintains that both doctors' testimony was limited to the facts surrounding their treatment of Pettus, that these facts were consistent with the medical records and, thus, that the testimony was admissible under the statute.

8

We begin our consideration of these issues by stating the provisions of Code § 8.01-399(B) that are relevant to this appeal. That section provides, in material part:

> B. If the physical or mental condition of the patient is at issue in a civil action, the diagnosis or treatment plan of the practitioner, as documented in the patient's medical record, during the time of the practitioner's treatment, together with the facts communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination or treatment shall be disclosed but only in discovery pursuant to the Rules of Court or through testimony at the trial of the action. . . . Only diagnosis offered to a reasonable degree of medical probability shall be admissible at trial.

The purpose of this statute is to define the scope of discovery and trial testimony that may be required of a treating physician when the physical or mental condition of a patient is at issue in a civil action. The plain language of the statute places within the scope of discoverable and admissible information the diagnosis or treatment plan of the treating physician as documented in the patient's medical record. Also within the scope of discoverable and admissible information are the facts communicated to the treating physician and any other facts learned by that physician in connection with his care of the patient. However, when a party seeks at trial to admit evidence of a treating physician's diagnosis, such evidence is admissible only if it is offered to a reasonable degree of medical probability.

9

We first consider Dr. Purohit's testimony that Pettus's mental disorientation "could have been" a central nervous system event. Dr. Purohit's answer was given in response to defense counsel's question whether during the course of treating Pettus, Dr. Purohit had formed an opinion about the cause of Pettus's abrupt change in mental status. Viewed in this context, Dr. Purohit's answer was factual in nature because it served to explain the impressions and conclusions he reached while treating Pettus. The answer did not impart an expert medical opinion at trial because Dr. Purohit was not stating his present opinion regarding Pettus's mental disorientation and the functioning of his central nervous system. Likewise, Dr. Purohit was not providing a diagnosis at this point in his testimony. Thus, the testimony was not subject to the general rule that a medical expert opinion must be rendered to a reasonable degree of medical probability. See Code § 8.01-399(B); State Farm Mut. Auto. Ins. Co. v. Kendrick, 254 Va. 206, 208-09, 491 S.E.2d 286, 287 (1997); Fairfax Hosp. System v. Curtis, 249 Va. 531, 536, 457 S.E.2d 66, 69 (1995); Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980).

We disagree with the plaintiff's contention that Dr. Purohit's answer was nevertheless inadmissible under Code § 8.01-399(B) because it deviated from the entries in his medical records. The medical records prepared by Dr. Purohit

refer to the possibility of a central nervous system embolic event.  Therefore, any distinction to be drawn between this written entry and Dr. Purohit's testimony did not affect the admissibility of the testimony but was a proper subject for cross-examination of the witness.

We next consider Dr. Purohit's response to defense counsel's question, "Do you have an opinion within a reasonable degree of medical certainty what the cause of Mr. Pettus' death was?"  After responding that he did not, Dr. Purohit then added, "In fact, that's the reason why many times we feel that unless an autopsy is done, it's really difficult to know what may have happened."  This statement did not address Dr. Purohit's actions and impressions formed during the course of his treatment of Pettus.  Instead, the statement indicated Dr. Purohit's present opinion that, in many cases, he and other physicians believe that an autopsy is necessary to determine the cause of a patient's death.  Thus, this answer offered an expert opinion that was speculative in nature and inadmissible because it was not stated to a reasonable degree of medical probability.  See John v. Im, 263 Va. 315, 320, 559 S.E.2d 694, 696 (2002); Kendrick, 254 Va. at 208-09, 491 S.E.2d at 287; Curtis, 249 Va. at 536, 457 S.E.2d at 69; Spruill, 221 Va. at 479, 271 S.E.2d at 421.

We find no merit in the defendants' contention that the plaintiff is barred from challenging the admissibility of this "autopsy" opinion because she offered evidence of the same character when she examined Dr. Purohit as a witness in the plaintiff's own case.  The scope of the "same character" rule is not as broad as the defendants contend.

The general rule is that when a party unsuccessfully objects to evidence that he considers improper but introduces on his own behalf evidence of the same character, he waives his objection to the other party's use of that evidence.  Drinkard-Nuckols v. Andrews, 269 Va. ___, ___, ___ S.E.2d ___, ___ (2004) (decided today); Combs v. Norfolk & Western Ry. Co., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998); Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992).  Although the rule is most often applied in cases when the party making the objection later introduces the same evidence, "it is properly and logically applicable in any case, regardless of the order of introduction, if the party who has brought out the evidence in question, or who has permitted it to be brought out, can be fairly held responsible for its presence in the case."  Whitten v. McClelland, 137 Va. 726, 741, 120 S.E. 146, 150 (1923).

The rule, however, is not applicable to matters elicited in the cross-examination of a witness or in the introduction of rebuttal evidence.  Drinkard-Nuckols, 269 Va. at ___, ___ S.E.2d

12

at \_\_\_ ; Snead v. Commonwealth, 138 Va. 787, 801, 121 S.E.2d 82, 86 (1924); see Brooks v. Bankson, 248 Va. 197, 207, 445 S.E.2d 473, 478 (1994); Combs, 256 Va. at 499, 507 S.E.2d at 360. We generally have applied the rule as a waiver of a party's objection to the admission of certain evidence when that party has elicited evidence dealing with the same subject as part of his own case-in-chief. See, e.g., Drinkard-Nuckols, 269 Va. at \_\_\_, \_\_\_ S.E.2d at \_\_\_ (plaintiff's use of testimony regarding physicians' expectations created waiver of objection to defendant's use of testimony on same subject); Combs, 256 Va. at 499, 507 S.E.2d at 360 (plaintiff's use of same exhibits in presenting demonstrative evidence created waiver of objection to defendant's use of those exhibits in presenting evidence); Hubbard, 243 Va. at 9-10, 413 S.E.2d at 879 (defendant's use of reconstruction opinion evidence regarding speed of defendant's vehicle created waiver of objection to Commonwealth's use of evidence on same subject). But see, e.g., Hoier v. Noel, 199 Va. 151, 155, 98 S.E.2d 673, 676 (1957) (plaintiff's introduction as rebuttal evidence testimony regarding defendant's driving habits created waiver of objection to defendant's introduction of testimony on same subject).

The defendants, however, effectively ask us to enlarge the rule's scope to apply this waiver principle to any purported violation of the same rule of evidence even when the subject

13

matter of the testimony or exhibit at issue is not the same. We decline the defendant's request because the rule properly focuses on a party's introduction of evidence on the same subject and was never intended to create a waiver permitting the consideration of inadmissible evidence on a different subject. We will not apply the rule in distortion of its purpose. See Brooks, 248 Va. at 207, 455 S.E.2d at 479. Thus, we conclude that the plaintiff's presentation of evidence from Dr. Purohit on the subjects of myocardial ischemia, coronary artery disease, and atrial flutter did not constitute a waiver of her objection to his opinion testimony concerning the need for an autopsy, and that the circuit court erred in admitting this opinion testimony.[5]

We turn now to consider the circuit court's decision overruling the plaintiff's objections to Dr. Evans's testimony. The first objection addressed Dr. Evans's testimony that he knew his nurses and was "pretty sure" that they would have told him if Pettus had complained of chest pain at the time of his discharge. We agree with the plaintiff that this testimony was inadmissible because it was purely speculative and was not based

---

[5] Because the plaintiff's evidence did not address the subject of autopsies and thus did not create a waiver of her earlier objection to Dr. Purohit's testimony on that subject, we need not consider whether the testimony she introduced without objection from the defendants contained expert opinions not stated to a reasonable degree of medical probability.

14

on any information concerning Pettus's complaints of pain that Dr. Evans received from his nurses. See Brown v. Corbin, 244 Va. 528, 531-33, 423 S.E.2d 176, 178-79 (1992).

We find no merit in the defendants' contention that the plaintiff waived any objection to the admission of this evidence by eliciting from Dr. Evans the above-quoted testimony concerning chest pain, dementia, and the significance of Pettus's EKG results. These matters did not address the subject whether Dr. Evans's nurses accurately reported any complaints of chest pain made by Pettus at the time of his discharge, but addressed Dr. Evans's evaluation of the significance of the stated factors in assessing Pettus's condition. Therefore, we conclude that the plaintiff did not waive her objection to Dr. Evans's testimony about his nurses by introducing this other evidence about Pettus's condition.

Finally, we consider whether the circuit court erred in allowing Dr. Evans to testify about the conclusions he reached when treating Pettus regarding a possible admission to the hospital. We hold that the circuit court did not err.

As Dr. Evans testified, part of his job was to evaluate patients to determine whether they required further treatment by a physician who had admitting privileges at the hospital. Dr. Evans's testimony relating to his evaluation whether Pettus should be admitted was not a statement of Dr. Evans's present

15

opinion, but was an explanation of his treatment plan for the patient and the impressions he formed at that time.  Therefore, the testimony at issue was factual in nature and was not subject to the general rule requiring that an expert medical opinion be stated to a reasonable degree of medical probability.  See Code § 8.01-399(B); Kendrick, 254 Va. at 208-09, 491 S.E.2d at 287; Curtis, 249 Va. at 536, 457 S.E.2d at 69; Spruill, 221 Va. at 479, 271 S.E.2d at 421.

The plaintiff contends that Dr. Evans's answer was nonetheless barred by Code § 8.01-399(B) because that information did not appear in Dr. Evans's medical records or reflect facts communicated or learned by Dr. Evans during his treatment of Pettus.  We disagree with the conclusion advanced by the plaintiff.

Code § 8.01-399(B) specifically permits evidence of a treating physician's treatment plan, as documented in the patient's medical record, to be elicited through testimony at trial.  Dr. Evans's answers directly related to his treatment plan for Pettus.  However, the record is not clear whether the plaintiff has placed Pettus's complete medical records before this Court on appeal.  Thus, we cannot say that those records lacked any documentation regarding the hospital admission aspect of Dr. Evans's treatment plan.  As Dr. Evans observed in his testimony, he made written notations on various parts of

16

Pettus's chart that were recorded separately from his handwritten emergency department entries dealing with his treatment of Pettus.

When a party seeks to have an issue decided in her favor on appeal, she is charged with the responsibility of presenting an adequate record from which the appellate court can determine the merits of her argument.  Commonwealth v. Williams, 262 Va. 661, 669, 553 S.E.2d 760, 764 (2001); McDonald v. National Enters., 262 Va. 184, 195, 547 S.E.2d 204, 211 (2001).  Because the plaintiff has not established that she complied with this requirement, we are unable to resolve the merits of her argument involving those complete records.  See Williams, 262 Va. at 669, 553 S.E.2d at 211; McDonald, 262 Va. at 195, 547 S.E.2d at 764.

For these reasons, we will affirm in part, and reverse in part, the circuit court's judgment and remand the case for a new trial consistent with the principles expressed in this opinion.

Affirmed in part, reversed in part, and remanded.