PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Lacy, S.J.[1]

BRADFORD L. KING, M.D., ET AL.

v.     Record No. 062502                    OPINION BY
                                   JUSTICE BARBARA MILANO KEENAN
                                        September 14, 2007
TAMATHA COOLEY

       FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                      Ann H. Simpson, Judge

     In this medical malpractice case, we consider issues related to the circuit court's exclusion of testimony that a defendant sought to present from a patient's treating physician.

     Tamatha Cooley filed a motion for judgment in the circuit court against Bradford L. King, M.D., and his employer, Surgical Associates of Fredericksburg (Surgical Associates), alleging that Dr. King was negligent in monitoring and treating Cooley after he performed gastric bypass surgery on her. Cooley asserted that as a result of Dr. King's negligence, she suffered rapid heart rate, decreased blood oxygen, and an intestinal leak, which caused her to sustain severe, permanent brain injury.

     The evidence at trial showed that Dr. King performed the gastric bypass operation in May 2003, and released

_____

     [1] Justice Lacy participated in the hearing and decision of this case prior to the effective date of her retirement on August 16, 2007.

Cooley from the hospital five days after the surgery. Cooley returned to the hospital the day after her release because she was experiencing increased pain and shortness of breath.

Dr. King testified that he was concerned Cooley had an intestinal leak and decided that she needed immediate surgery (the second surgery). According to Dr. King, while he was "scrubbing" his hands in preparation for the second surgery, he witnessed Cooley retch during the anesthesia intubation process. Dr. King also stated that he was told Cooley had vomited and had vomitus material in the back of her throat and mouth.

Robert Harry, M.D., assisted Dr. King with the second surgery. Dr. King testified that during the second surgery they discovered and repaired a small intestinal leak. After this surgery, Cooley's health deteriorated, and she ultimately suffered permanent brain injury.

The parties disagreed concerning the cause of Cooley's brain injury and presented conflicting expert medical testimony in support of their respective theories of the case. Cooley presented witnesses who testified that her injuries resulted from Adult Respiratory Distress Syndrome (ARDS) and sepsis, which she alleged were caused by Dr.

King's failure to timely diagnose and treat her intestinal leak.

Dr. King and Surgical Associates (collectively, the defendants) presented testimony from Dr. King and three other physicians. These witnesses testified that Cooley's injuries were caused by Cooley's aspiration of the vomitus material during preparation for her second surgery, which damaged her lungs and ultimately caused her brain damage.

The defendants also sought to introduce testimony from Dr. Harry regarding Cooley's condition after the second surgery, during the time Dr. Harry continued to care for Cooley as one of her treating physicians. Cooley objected to this testimony on the ground that the defendants had not complied with the terms of the circuit court's pre-trial discovery order, which required the parties to identify their "experts" and to provide a summary of the expected testimony of each "expert." Before ruling on Cooley's objection, the circuit court permitted Cooley to question Dr. Harry outside the presence of the jury. The following exchange took place between defense counsel and Dr. Harry:

> Q. Okay, and during the course of your treatment of Mrs. Cooley, after the surgery, did you form an impression as to what was wrong with her?
> A. I did.
> Q. And what was that impression?
> A. I felt she was suffering from aspiration pneumonia.

Although Cooley objected to the admission of this testimony, she conceded that Dr. Harry's conclusion would have been rendered to a reasonable degree of medical probability, and that his conclusion had been documented contemporaneously in the medical record during his treatment of Cooley. The circuit court sustained Cooley's objection and excluded Dr. Harry's proffered testimony.

The jury returned a verdict in favor of Cooley for $3,500,000. The trial court reduced the amount of the verdict to $1,650,000 in accordance with Code § 8.01-581.15, and entered final judgment in favor of Cooley.[2] The defendants appeal.

The defendants argue that the circuit court erred in excluding Dr. Harry's testimony on the basis of the pre-trial order because Code § 8.01-399(B) provides for the admission of such testimony by a treating physician. Relying on this Court's opinions in Pettus v. Gottfried, 269 Va. 69, 606 S.E.2d 819 (2005), and Holmes v. Levine, 273 Va. 150, 639 S.E.2d 235 (2007), the defendants contend that Dr. Harry's proffered testimony was admissible under Code § 8.01-399(B) because his testimony was factual in nature

---

[2] The damage recovery cap prescribed by Code § 8.01-581.15 for medical malpractice actions set this amount as the limit for recovery at the time this action arose.

4

and constituted an impression formed contemporaneously with his treatment of Cooley.

In response, Cooley argues that the circuit court did not err in excluding Dr. Harry's testimony regarding Cooley's condition after the second surgery because that testimony was an expert medical opinion that was not properly disclosed under the terms of the pre-trial order. Alternatively, Cooley asserts that if the circuit court erred in excluding Dr. Harry's testimony, such error was harmless because several other physician witnesses testified that Cooley had aspirated and that such aspiration caused Cooley's brain injury.

In considering these issues, we initially observe that Dr. Harry's proffered testimony is different from the type of medical testimony at issue in Pettus and Holmes. Those cases involved our consideration of factual observations made by treating physicians and the admissibility of those observations under Code § 8.01-399(B), which provides:

> If the physical or mental condition of the patient is at issue in a civil action, the diagnoses, signs and symptoms, observations, evaluations, histories, or treatment plan of the practitioner, obtained or formulated as contemporaneously documented during the course of the practitioner's treatment, together with the facts communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination or treatment shall be disclosed but only in discovery pursuant to the Rules of Court or through testimony at the trial of the action. . . . Only

5

diagnosis offered to a reasonable degree of medical probability shall be admissible at trial.

In Pettus, we held admissible under Code § 8.01-399(B) a treating physician's conclusion during the course of treatment that a patient's change in mental status "could have been" a central nervous system problem. 269 Va. at 77, 606 S.E.2d at 824. We explained that although the challenged testimony was not stated to a reasonable degree of medical probability, the testimony was nevertheless admissible under the statute because the testimony did not constitute a diagnosis but was "factual in nature" and simply related the physician's impression while treating the patient. Id. at 78, 606 S.E.2d at 825.

We applied this same principle in Holmes, in which we considered the admissibility of a treating physician's testimony that she "did not think that an occasional red blood cell would qualify for microscopic hematura." 273 Va. at 157, 639 S.E.2d at 240. We held that the testimony was admissible even though not stated to a reasonable degree of medical probability because the testimony was not a diagnosis but only an impression the physician reached while rendering her treatment. Id. at 162, 639 S.E.2d at 241.

In the present case, Dr. Harry's testimony was not merely a factual impression but imparted an actual diagnosis

6

because he identified the type and cause of a health condition based on a patient's signs and symptoms. See Combs v. Norfolk & Western Ry. Co., 256 Va. 490, 496-97, 507 S.E.2d 355, 358-59 (1998). Thus, Dr. Harry's testimony was admissible under Code § 8.01-399(B), unless properly excluded under the terms of the pre-trial order, as a diagnosis offered to a reasonable degree of medical probability and contemporaneously documented in the medical record.

We need not decide, however, whether the circuit court erred in excluding Dr. Harry's testimony on the basis of the pre-trial order because, even if the circuit court erred in its ruling, such error was harmless. Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the jury verdict. Forbes v. Rapp, 269 Va. 374, 382, 611 S.E.2d 592, 597 (2005); Pace v. Richmond, 231 Va. 216, 226, 343 S.E.2d 59, 65 (1986); see Code § 8.01-678.

The defendants argue that the exclusion of Dr. Harry's testimony was not harmless, particularly in view of the closing argument made by Cooley's counsel. In that argument, Cooley's counsel emphasized that the defendants had not presented any witnesses who had observed the alleged aspiration. The defendants also contend that they suffered

7

prejudice from the exclusion of the proffered testimony because the circuit court's ruling excluded the testimony of one of Cooley's treating physicians.

We find no merit in these arguments. Dr. Harry's proffered testimony did not reference any observations he had made concerning events that occurred in the operating room at the time of the second surgery. Therefore, nothing in the proffered testimony would have enabled the defendants to produce a witness who could have testified to having observed the alleged aspiration.

Additionally, we do not accept the defendants' argument that Dr. Harry's status as a treating physician, of itself, made the exclusion of the proffered testimony prejudicial error. The limited scope of the proffer isolated Dr. Harry's medical opinion from any factual context or explanation that could have rendered his testimony different from the testimony of the other physicians providing medical opinions for the defense. Thus, Dr. Harry's unexplained opinion of aspiration pneumonia was merely cumulative of the other medical opinions given by the defendants' other physician witnesses.

Dr. John C. Schaefer, who practices internal medicine with a subspecialty in infectious diseases, testified that Cooley's inability to be oxygenated after the second surgery

8

was caused as a result of aspiration.  Dr. Gregory L. Schroeder, a surgeon whose practice incorporates both general and bariatric surgery, concluded that Cooley suffered an aspiration during the induction of general anesthesia that caused aspiration pneumonitis or pneumonia. Finally, Dr. Walter Pories, a bariatric surgeon, stated that Cooley's injuries resulted from aspiration.  Because Dr. Harry's proffered testimony was merely cumulative of this other testimony, we hold that the exclusion of Dr. Harry's testimony could not have affected the jury's determination and, thus, was harmless error.  See May v. Caruso, 264 Va. 358, 363, 568 S.E.2d 690, 693 (2002); Bryan v. Burt, 254 Va. 28, 32-33, 486 S.E.2d 536, 538 (1997); Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 138, 413 S.E.2d 630, 636 (1992).

Finally, the defendants complain that the circuit court erred in denying them the right to fully cross-examine one of Cooley's expert witnesses, Julie Kim, M.D.  During her testimony, Dr. Kim stated that she had reviewed Cooley's hospital records, and that Dr. Kim had "no document evidence to believe that [Cooley] aspirated."  When defense counsel attempted to challenge Dr. Kim's statement by asking her about the contents of an "intensive care admit note" contained in Cooley's medical record, Cooley objected.  The

circuit court sustained Cooley's objection on the basis of hearsay.

We are unable to consider the merits of the defendants' argument that the circuit court erred in preventing them from cross-examining Dr. Kim about this note, because the issue has not been preserved for appeal.  Although defense counsel stated that she intended to cross-examine Dr. Kim about the note in order to challenge Dr. Kim's assertion that "nothing" in Cooley's medical record indicated that Cooley aspirated, defense counsel did not proffer the testimony she expected to elicit from Dr. Kim.  In the absence of such a proffer, we are unable to determine whether the circuit court's decision to exclude that testimony, if erroneous, prejudiced the defendants.  See Williams v. Harrison, 255 Va. 272, 277, 497 S.E.2d 467, 471 (1998); Clagett v. Commonwealth, 252 Va. 79, 95, 472 S.E.2d 263, 272 (1996); Chappell v. Virginia Elec. Power Co., 250 Va. 169, 173, 458 S.E.2d 282, 284-85 (1995).  "[W]hen testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer."  Chappell, 250 Va. at 173, 458 S.E.2d at 285 (quoting Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977)).

10

For these reasons, we will affirm the circuit court's judgment.

Affirmed.

11