COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, AtLee and Callins
Argued at Richmond, Virginia

RUBEN MURPHY, III

MEMORANDUM OPINION[*] BY
v.      Record No. 0865-23-2          JUDGE GLEN A. HUFF
                                      AUGUST 20, 2024

EDWARD OLIVE, ADMINISTRATOR FOR THE ESTATE
 OF DARLENE OLIVE, N.P., DECEASED, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Rodney Sager (The Law Offices of Rod Sager, P.C., on briefs), for
appellant.

Anthony S. Cottone (Sean P. Byrne; Byrne Canaan Law, on brief),
for appellees.


Ruben Murphy, III ("appellant") appeals an order from the Circuit Court of the City of

Richmond (the "circuit court") granting summary judgment in favor of appellees. In eight

assignments of error, appellant argues that the circuit court erred in denying his motion to

disqualify defense counsel, denying his various discovery motions, closing discovery over his

objection, and granting appellees' request for summary judgment. Finding no error in the

granting of summary judgment, and finding no other basis to disturb that decision, this Court

affirms the circuit court's judgment.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] This Court also denies appellant's renewed motion to extend the page limits for his
reply brief, and denies appellees' motion to dismiss for failure to prosecute.

BACKGROUND

On January 16, 2019, appellant filed a medical malpractice claim against Nurse Practitioner Darlene Olive; her company, Working Well, LLC; her supervising doctor, Dr. James W. Ross; and Dr. Ross's company, Virginia Industrial Medicine ("appellees").[2] He alleged that appellees' negligence in treating a chemical burn on his left foot caused further injury and necessitated the amputations of his first and fifth toes, and that appellees never obtained his informed consent. Appellant had previously filed a duplicate action that was nonsuited on July 17, 2018.

Appellant filed a series of pretrial motions during the course of this litigation. The first sought to disqualify defense counsel for conflict of interest because he represented all the defendants in the case; appellant asserted that the defendants could potentially have claims against each other in the suit. Defense counsel asserted that the defendants all consented to the joint representation, had no conflict in fact, and waived any potential conflict of interest. After a hearing, the circuit court denied appellant's motion. Notwithstanding that denial, appellant continued to file legal memoranda throughout the continuing litigation, arguing that defense counsel should be disqualified for conflict of interest. The circuit court considered these filings as motions for reconsideration, which it denied twice and then declined to address the issue further.

Appellant also filed a pretrial motion for a protective order prohibiting the obstruction of depositions with speaking objections. In the nonsuited case, the parties had contentious depositions, and appellant sought a protective order to prevent defense counsel from objecting in future depositions. After reviewing the prior deposition transcripts, the circuit court issued an opinion letter that denied the motion but called for the parties to behave professionally. After the presiding judge recused himself, appellant filed several motions alleging the protective order issue was

---

[2] Administrator Edward J. Olive was later substituted for appellee Darlene Olive after she passed away.

"unresolved" and asserting that the prior judge's order should be vacated as void ab initio. The circuit court did not address these later motions by written order.[3]

In his expert witness designation, appellant identified the healthcare providers that treated his left foot following his treatment with appellees, including Dr. Boykin, a plastic and reconstructive surgery expert. The only consulting experts appellant identified to provide testimony at trial were Nurse Practitioner Renee Seaman, wound care specialist Dr. Deborah Armstrong, and Nurse Practitioner Lissette Kinsella. Nurse Seaman and Dr. Armstrong were designated to testify that appellees negligently breached the standards of care in treating a chemical burn and that this breach caused appellant further injury. Nurse Kinsella was designated to testify regarding standards of care in treating a chemical burn, as well as whether specific documents related to informed consent existed.

Approximately one week after her deposition on July 29, 2022, Dr. Armstrong informed appellant that she was withdrawing from the case. Unaware of the withdrawal, appellees filed a motion *in limine* on August 22, 2022, related to Dr. Armstrong's anticipated testimony. Appellant asserted in response that Dr. Armstrong's testimony was admissible and made no mention of her withdrawal from the case.

The discovery deadline passed on August 24, 2022, for the anticipated trial starting on October 3, 2022. After the parties appeared on September 22, 2022, to argue the motion *in limine*, the circuit court continued the trial on its own motion to an unspecified future date. Appellees moved to keep discovery closed notwithstanding the continued trial. On October 25, 2022, Dr. Armstrong sent an unsolicited email to defense counsel, asking about the results of the case and

---

[3] Although it did not address this issue specifically, the circuit court noted in its final order that it did "not find it necessary to respond to Plaintiff's counsel's unfounded allegations of impropriety, mischaracterization, or misrepresentation against Defense counsel and / or this Court."

mentioning her prior withdrawal. Defense counsel forwarded the email to appellant and the circuit court, asking to confirm its accuracy given that Dr. Armstrong's testimony was the subject of pending motions still under consideration by the circuit court.

Appellees then filed a motion for summary judgment alleging a fatal lack of evidence in appellant's case because Dr. Armstrong's testimony was necessary to establish causation of damages. Appellant argued by written motion that discovery should continue because the trial date was continued and that Dr. Armstrong's communication should not be considered by the circuit court because it was privileged and confidential. Appellees then subpoenaed Dr. Armstrong to testify at a hearing on January 25, 2023; appellant filed a motion to quash that subpoena two days before the hearing. The circuit court permitted Dr. Armstrong's testimony, which confirmed her withdrawal from the case as well as the fact that appellant was aware of such withdrawal. The parties then argued their positions concerning summary judgment and discovery closure.

On that same day, the circuit court entered an order affirming that discovery remained closed as of the August 2022 date. The circuit court then requested supplemental briefing on the summary judgment matter. Appellees argued in brief that because appellant's own medical care providers were limited to contemporaneously documented opinions in the treatment records under Code § 8.01-399, and that such records were devoid of causation opinions, those experts could not testify that any alleged negligence caused damages. Additionally, appellees asserted that because nurse practitioners cannot give causation opinions against defendant health care providers under Code § 8.01-401.2(B)(ii), Dr. Armstrong was the only properly designated expert to give a causation opinion, and she had withdrawn from the case. For these reasons, appellees asserted that appellant had no causation testimony to present at trial, which meant that his malpractice claim could not succeed as a matter of law.

Appellant argued in brief that discovery should continue, that Dr. Boykin could testify about causation, and that his expert witnesses could testify to the standard of care and informed consent. By final order of April 17, 2023, the circuit court granted the motion for summary judgment, finding that appellant could not present causation testimony at trial and therefore could not establish a prima facie case against appellees.

This appeal followed.

## ANALYSIS

### I. Summary Judgment

Appellant asserts that the trial court erred in granting summary judgment because there was evidence of causation of damages, other than Dr. Armstrong's testimony, that he could have presented at trial. "[I]n an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Shifflett v. Latitude Props., Inc.*, 294 Va. 476, 480 (2017) (quoting *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 196-97 (2017)); *see also* Rule 3:20 ("Summary judgment may not be entered if any material fact is genuinely in dispute."). "Under well-settled principles, we review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl v. Stitt*, 301 Va. 1, 8 (2022) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

### A. Dr. Boykin's Causation Testimony

Appellant asserts that the circuit court erred in granting summary judgment because Dr. Boykin, one of appellant's treatment providers, could have testified to causation.

Under Code § 8.01-399(B), the testimony of an expert medical treatment provider is limited to the facts and opinions "obtained or formulated as contemporaneously documented during the course of the practitioner's treatment, together with the facts communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination or treatment." Thus, to review whether a proffered expert qualifies to testify about specific facts or opinions, an appellate court must review the patient's full medical record to determine what was "contemporaneously documented." *See, e.g.*, *Pettus v. Gottfried*, 269 Va. 69, 81 (2005).

"When a party seeks to have an issue decided in [his] favor on appeal, [he] is charged with the responsibility of presenting an adequate record from which the appellate court can determine the merits of [his] argument." *Id.* Appellant asserts that the records of his treatment would permit Dr. Boykin to testify as to causation. The appellate record, however, contains none of Dr. Boykin's treatment records, thereby leaving this Court unable to determine the proper scope of Dr. Boykin's potential testimony.[4] "Because the [appellant] has not established that [he] complied with this requirement, we are unable to resolve the merits of [his] argument involving those complete records." *Id.* In the absence of a record to support the claim that Dr. Boykin could have testified as to causation, appellant's claim on appeal fails.

### B. Nurse Standard of Care Testimony

Appellant also asserts that his designated nurse practitioners could testify as to the standard of care of other nurse practitioners, such as Olive. In his opening brief, he quotes almost all of Code § 8.01-401.2(B), but omits subsection (ii), which states that a nurse practitioner cannot testify as an expert witness against "a defendant health care provider in a medical malpractice action regarding *causation*." Code § 8.01-401.2(B)(ii) (emphasis added).

---

[4] Appellant did not file the transcript of Dr. Boykin's deposition within the time limit defined by Rule 5A:8; therefore, the transcript is not a part of the record on appeal and this Court may not consider it. Rule 5A:8(a).

Generally, in a medical malpractice action, a plaintiff must present expert testimony to establish "the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages." *Mayr v. Osborne*, 293 Va. 74, 82 (2017) (quoting *Beverly Enters.-Va., Inc. v. Nichols*, 247 Va. 264, 267 (1994)). The issue presented at summary judgment was not whether appellant had experts that could testify as to the standard of care for one or more defendants, but whether he could present the necessary testimony that violation of those standards *caused* his resulting claimed damages. Thus, the issue of available proof of the standard of care is not dispositive, and the statute specifically forbade his nurse experts from testifying as to that causation element.

### C. Nurse Informed Consent Testimony

Lastly, appellant asserts that his expert designation of Nurse Kinsella was sufficient to proceed to trial on an informed consent claim. "To succeed on an informed consent claim, the plaintiff must establish that the physician breached the standard of care by failing to disclose the material risks associated with the treatment or procedure, or the existence of alternatives if there are any[.]" *Pergolizzi v. Bowman*, 76 Va. App. 310, 323 (2022) (quoting *Allison v. Brown*, 293 Va. 617, 628-29 (2017)).

In her expert designation, Nurse Kinsella "was also asked to consider and give an opinion regarding informed consent." Although the designation specifies Kinsella's review of specific documents and whether they related to informed consent, it contains no opinion that any defendant breached the standard of care as to informed consent. "Rule 4:1(b)(4)(A)(i) requires that the substance of [expert] opinions to be rendered be disclosed." *John Crane, Inc. v. Jones*, 274 Va. 581, 593 (2007). Kinsella's designation only authorized her to discuss whether specific documents related to informed consent; it did not permit her to testify that any defendant breached the standard

of care as to informed consent. Without that necessary element, appellant could not proceed with an informed consent claim.

## II. The January 25, 2023 Hearing

Appellant further asserts that the circuit court erred in hearing Dr. Armstrong's testimony about her withdrawal from the case as well as denying his motions at that proceeding. He argues that it was improper for the circuit court to receive Dr. Armstrong's testimony about her withdrawal because that information was privileged. He also asserts that the circuit court erred in not recusing itself after receiving the ex parte email from defense counsel and hearing Dr. Armstrong's testimony regarding her withdrawal from the case.

Relying on *Turner v. Thiel*, 262 Va. 597 (2001), appellant argues that Dr. Armstrong's status as an expert witness was confidential information protected by privilege and that defense counsel violated that privilege by contacting the circuit court and sharing the content of Dr. Armstrong's unsolicited email. In *Turner*, the Virginia Supreme Court defined confidential information related to a party's expert witness as the expert's strategies, mental impressions, theories, and evaluations of the merits of the case, as well as the types of experts the party expected to produce. *Id.* at 602-03. The Court held that because the information disclosed constituted "mental impressions and trial strategies," it was privileged, confidential attorney work product. *Id.* at 603.

Unlike the disclosed information in *Turner*, Dr. Armstrong's testimony did not address any issue related to the merits of appellant's case, any mental impressions, or trial strategy. Defense counsel only elicited testimony about whether Dr. Armstrong intended to participate in the case and would testify at trial. Whether an expert witness plans to testify at trial is not privileged information; rather, appellant was *required to disclose* the anticipated trial witnesses in an exhibit and witness list due September 19, 2022. At the time of the January 25, 2023 hearing, there were

defense motions *in limine* pending before the circuit court regarding Dr. Armstrong's trial testimony; whether she would testify at all was therefore a pertinent matter for the court's consideration. Accordingly, the circuit court did not err in accepting testimony from Dr. Armstrong verifying whether she was an active witness in the case, and no privileged information was disclosed during the hearing.[5]

### III. Closing Discovery

To the extent appellant asserts that the circuit court erred by closing discovery and not permitting him to update his expert designation, this Court disagrees. Under Code § 8.01-4, circuit courts have the authority to impose a discovery deadline consistent with the Rules of the Supreme Court of Virginia. "On appeal, this Court reviews a claim that the trial court erred in the manner in which it oversaw the parties' discovery pursuant to the Rules of the Supreme Court of Virginia under an abuse of discretion standard." *Harvey v. Commonwealth*, 76 Va. App. 436, 472 (2023). A circuit court abuses this discretion "only when 'reasonable jurists could not differ' in their assessment that an erroneous result was reached." *Id.* (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

Appellant first asserts that when a trial is continued, the circuit court is required to "update" a pretrial scheduling order consistent with that new trial date. But Rule 1:18(a) specifies that even when the parties agree to a pretrial scheduling order, the circuit court may require a hearing if the proposed deadlines are "not consistent with the efficient and orderly administration of justice." Then, the circuit court "may, upon request of counsel of record for any party, or in its own discretion, enter the pretrial scheduling order." Rule 1:18(b). If a party objects to a term within that pretrial order, the circuit court will hold a hearing on that objection. *Id.*

---

[5] The circuit court therefore had no reason to recuse itself and this Court need not address that claim any further.

Nowhere does Rule 1:18 *require* the circuit court to allow a party extended discovery under a new pretrial order when a case is continued. Rather, the rule gives the circuit court discretionary authority to enter or amend a pretrial scheduling order. Additionally, Rule 4:1(c) permits the circuit court to enter a protective order denying discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Nonetheless, appellant asserts that the circuit court abused its discretion in granting a protective order and not permitting discovery to continue from the August 2022 deadline.

Appellant first filed a complaint in 2015 and refiled it in 2019 after a nonsuit. He had ample opportunity between then and August 24, 2022, to prepare his expert witnesses. He also had an opportunity after Dr. Armstrong withdrew to update his expert witness designations or seek timely remedies from the circuit court. He failed to take necessary action in that time to account for Dr. Armstrong's withdrawal, and only sought to do so after the circuit court heard testimony from the expert witness as to her trial availability, over appellant's own objection. The circuit court has inherent authority to enforce discovery deadlines to promote "the efficient and orderly administration of justice," and this Court finds no abuse in the exercise of such discretion here.[6]

## IV. Other Assignments of Error

Appellant assigns additional error to the circuit court's decision to close discovery on the basis that it denied him the opportunity to seek other fact witnesses. Additionally, in five other assignments of error, appellant challenges the circuit court's refusal to disqualify defense counsel and to revisit the rulings from prior orders. None of these alleged errors relate to the ultimate issue of whether the trial court erred in granting summary judgment because appellant could not produce

___

[6] Appellant also argues on brief that the circuit court should have allowed him to use his designated rebuttal expert, Dr. Charles Bonner, in his case-in-chief to replace Dr. Armstrong. Because he never made that argument to the circuit court, this Court will not contend with it for the first time on appeal. Rule 5A:18.

expert evidence required to establish a prima facie case. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Swann*, 290 Va. at 196). Because this Court's decision affirming the circuit court's grant of summary judgment is dispositive of the case, this Court therefore declines to address these tangential and unrelated issues.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*